

# Bandy Lee, MD, MDiv

Forensic Psychiatrist and Attorney-in-Fact

NPI 1922140326

July 18, 2025

<u>**EMERGENCY COMMUNICATION CONCERNING MEDICAL RISK**</u>

Hon. Jamel K. Semper
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, New Jersey 07101

**Ref.: *Lee v. Novey Catuogno* et al., Case No. 2:25-cv-13291**

Dear Hon. Judge Semper:

I currently write to you as Patricia Lee's attorney-in-fact, not to represent her but to communicate to the court during her debilitation, as someone she has designated to "aid … in the exercise or enjoyment of her rights granted or protected by the ADA," or the Americans with Disabilities Act of 1990.

We were finally able to access records in the Public Access to Court Electronic Records (PACER) system, and it appears that Patricia Lee's motion for an emergency temporary restraining order (TRO) was heard without the exhibits attached to them. They were submitted separately but somehow did not get on the record, and hence I am attaching them for your consideration: you will see that multiple physicians over the years have warned of the danger to Patricia Lee's life, as a direct consequence of the actions of the family court. This is not subjective speculation, but a medical consensus beyond a reasonable doubt.

Indeed, she suffered ten near-death episodes, eight hospitalizations, and an intensive care unit (ICU) admission following the Judgment of Divorce that is medically confirmed to have caused irreparable brain injury (from multiple mini-strokes, confirmed on MRI and SPECT) and permanent damage to the knee (from full-body, stress-induced muscle contractions, confirmed on MRI).

*Therefore, irreparable harm has already occurred.* If more of these injuries occur, it is highly likely that her life will be in danger, as at least a dozen physicians, including her cardiologist and nephrologist, have warned. Incidentally, five ICU specialists all agreed that the only remedy for her constant risk of death by stroke was "justice"—something she has not had and has been seeking, ever since her coercively controlling ex-husband began his legal abuse through what appears to be a compromised judge. From a medical standpoint, there could not be a more clear-cut risk of irreparable harm—enough to alarm every physician Patricia Lee has seen—instigated by an ex-husband with a 17-year history of domestic violence and attempted homicide.

If there seem to be "too many" litigations, a genuine possibility is that there may be continued abuses of authority, and justice has been elusive. I must admit that I helped file the first lawsuit on Patricia Lee's behalf, with paralegal help, in the naïve belief that if a judge carried out no activity that resembled a judicial role—authorizing police raids to kidnap children without a cause, never holding any evidentiary hearing, relying solely on unchecked perjury, and issuing a blanket "sealing order" without even notifying a litigant, *etc.*—that this would not be covered under judicial immunity. Now I understand why the judge

under her, whom I have learned of.  As a medical professional, I can see how this predictably (and preventably) occurs.  For every death, there are perhaps hundreds of individuals seriously injured and newly disabled, like Patricia Lee, who was in perfect health before family court.

Regardless of how many litigations there are (four is hardly excessive), each case should be heard independently and not simply refer to previous rulings, any or all of which may be in error—especially since *no evidence has ever been heard* in the original "trial" court.  It is certainly not justice to *a priori* stereotype and stigmatize a litigant, simply because she is desperately seeking relief. A quandary for me has been why every court simply refers back to the original family court, under one judge without a jury and no checks or balances under Star Chamber-like, tightly-guarded secrecy—when in my experience it is the most flawed court I have seen in my 25 years as an expert witness for the courts.

My sister's case illumined me about the depth of corruption and criminality being exercised through the family courts, and I have now testified before eight different legislatures.  Legislators are aghast, and after Arizona, five other states are duplicating the hearings.  I enclose my testimony to the Arizona Senate for your information.

Patricia Lee is currently bedridden and in a medical crisis.  Since her discharge from the ICU, in which she spent five days, she has not had any chance to recover.  She tried in good faith to move out of the house in February 2025—especially after her ex-husband smashed a stone step to the house, threatening her death, and was placed on a restraining order—but medical experts advised her return.  During the two months that she left, she declined sharply and, as expected without her physiotherapy equipment, which she needs throughout the day every day, and as all her doctors warned, she suffered irreparable injury.  She petitioned the court to give her just enough time to recover back to baseline, but the court refused, as I truly believe it intends to kill her. Several forensic psychiatrists confirmed the ex-husband's homicidal tendencies, and "conveniently", the judge ordered that Patricia Lee keep her life insurance after the divorce, even paying the premiums herself.  Her ex-husband has too much to gain ($1 million from her death and $1.3 million from the house) not to miss this "opportunity".

We do not care about the house.  Patricia Lee's ex-husband already owes me over $2 million for not meeting his marital responsibilities.  He is a dangerous man with a duly-diagnosed criminal personality—psychopathy—but his entitlement has swollen exponentially with family court "support" (also, he recently collected the life insurances of his mother and his sister, and has caused one employer to be fined $38 million and another to be hit with federal sanctions for financial fraud—for which he was laid off).  In this context, we are just struggling to survive.

Please review the attached exhibits, and advise if Patricia Lee needs to file a motion for reconsideration for you to reconsider her case.  It could be life-saving for her.

Sincerely,

Bandy Lee, M.D., M.Div.

<u>**Testimony to the Arizona Senate**</u>
<u>**Ad Hoc Committees on Family Court Orders**</u>
**By Bandy X. Lee, M.D., M.Div.**

My name is Bandy Lee.  I am a forensic psychiatrist and violence expert with 25 years of experience serving as an expert witness in approximately 200 criminal and civil court cases around the country, of which about 50 were in family court across 22 states.  I am also president of the World Mental Health Coalition and cofounder of the Violence Prevention Institute.  I was a research fellow of the National Institute of Mental Health, and taught at Yale School of Medicine and Yale Law School for 17 years before recently joining the Harvard Program in Psychiatry and the Law.  In 2007, I helped coauthor the United Nations Secretary-General's chapter on "Violence against Children," among other international documents on violence prevention to help governments implement prison reform and other violence reduction projects around the globe.  I am a recipient of the National Research Service Award and author of the textbook, *Violence* (Lee, 2019), as well as over 100 scientific articles and chapters.  For clinical practice, I work in maximum-security prisons, treating some of the most violent individuals our society produces.

Yet, nothing prepared me for the family courts.  We do not ordinarily think of family courts as sites of violence, but by denying or, worse, by exploiting the existence of domestic violence and child abuse, family courts have become one of the deadliest places for children and the adults who try to protect them.  I commend you for addressing this serious issue and for calling out family court abuse as the national emergency that it is.  I have testified before the legislatures of Colorado, New York, Louisiana, Tennessee, and Washington, and I am very honored to be here.

I will be submitting a more scholarly written testimony with empirical data to back my assertions, but for now I will not mince words: family courts are a danger to society and, unless dramatically reformed, they need to be abolished altogether for the safety of our children and their loving families.  This may sound extreme, but when an institution causes far greater harm than good—indeed, sends close to 100,000 children per year to their soul murder (Silberg, 2008), if not actual murder—then such an intervention is necessary.

Despite my 25 years as an expert witness for the courts, I did not know about the family courts.  Since learning about them, I have tried to take as many family court cases as possible.  However, while I am considered a highly-qualified expert in criminal or any other court, only in family court am I unwelcome.  In fact, judges often try to find almost any reason not to admit me.  This is because they as a rule are not looking for qualified experts; they seek poorly-trained or compromised, so-called "experts" who will fix the results in the direction they desire—that is, the opposite direction of which the case should go (George Washington University, 2018).  Unfortunately, sending children to their abuse, rape, battery, murder, sex trafficking (Sprang and Cole, 2018), and pornography production (Salter and Wong, 2024) has become a lucrative business.

I would not have known about family courts, except for my sister's divorce.  One moment, her children are thriving under her care, with perfect physical and psychological health, and she is praised around the neighborhood for her parenting skills, consulted by other parents and teachers.  The next moment, their previously absentee father files for divorce, and her children are seized in

a police raid without warning on her legitimately-assigned weekend with them, and the violently abusive father who almost killed each of his two children by head injury gets sole custody, and the mother has not seen or heard from the children she raised from birth for the next four years. What reason did the family court give? She was supposedly "mentally ill"—even though no licensed professional ever raised any concerns. Subsequently, she has been evaluated by *eleven* world-renowned psychiatric experts, some of them consultants to the United Nations, the U.S. Supreme Court, and the International Criminal Court, who all unanimously said she has "excellent mental health" and "exceptional talent in parenting," but none of this mattered. Only one *unlicensed* and *unqualified* "associate counselor"—Tara Devine—with a non-social work master's degree contradicted them all, and this is the singular report the family court judge accepted.

In addition to these so-called "experts", family courts make use of guardians *ad litem*. In my sister's case, the guardian *ad litem* lied or perjured 600 documented times, and even co-conspired with her ex-husband to attempt to cause her demise, hospitalizing her in the intensive care unit, but to the end Judge Jane Gallina-Mecca only protected her. In fact, the judge now appoints this guardian *ad litem*, Evelyn Nissirios, in almost every case she presides over. For these reasons, we are now petitioning to impeach Jane Gallina-Mecca, with over 2500 signatures and over 30 witnesses (M. B., 2024), with one of the nation's foremost constitutional scholars and former U.S. Supreme Court nominee, Bruce Fein, Esq., writing the articles of impeachment.

After participating in approximately 50 family court cases, I have come to learn that my sister's situation is not unique. Cases may vary widely, but family courts all across the country produce almost identical results when abuse is involved—which is the vast majority of custody cases. That is, custody is almost invariably taken from stable, nurturing parents who are well-bonded with their children, to be given to their abusers—under unscientific pretexts such as "parental alienation" (Meier, 2020). The more clear-cut the cases, the more draconian this formula (Dreyfus, 2023), and the stronger the evidence the good parents present, the more retaliation they face. I have not once seen supervised visits be applied to the dangerous parent, and if the children resist, as healthy children do, they are sent to "reunification camps," which are in truth reeducation torture camps (Frosch, 2024)—which Arizona has fortunately banned.

I have often compared Family Courts to the prison system I have studied for decades. Medieval barbarism that civilized society cannot imagine happens within them. Those who enter are grievously maltreated, and all manner of human rights violations occur with no accountability because of a lack of transparency. Torture is routine, and even murder goes unpunished—only, family courts are worse, since the targets are innocent children. In family courts, judges have the authority to "seal" their cases, and this essentially gives them Star Chamber-like secrecy. What usually occurs within is unmoored from the law (Summers, 2023). The exceptional discretion that family court judges have was granted so that judges could exercise benevolence with vulnerable families, but a 120-year chronicle has shown that it has rather regularly been used for malevolence (Spinak, 2023).

When tragic deaths happen all too often, the public assumes that there must have been extenuating circumstances or that these institutions are doing their best under difficult circumstances. They do not imagine that family courts actually facilitated the deaths, or even forced them on families that mobilized all their resources to prevent (Goldstein, 2013). I have come to call family courts anti-

courts, where case fixing replaces fact finding, pseudoscience is given precedence over established science, conflicts of interest replace the requirement of impartiality, and the greatest injustices done to families are committed in the name of "justice".

Instead, prisons and family courts, because of their secrecy and impunity, have become magnets for violent, sadistic, and psychopathic individuals who relish exercising power over others. (These are the predators and perpetrators we are entrusting our vulnerable children to!) Those who do not "go along" with the culture are threatened and ousted. Prison guards may be seen as poorly-trained individuals from similar backgrounds as the prisoners, but family court players are even more dangerous, since they are driven by a 50- to 175-billion-dollar industry (Berger, 2014), hidden beneath the power of being called a "court".

The Center for Judicial Excellence (2025) has tracked 990 children murdered by a divorcing or separating parent over a 17-year period in the United States. A detailed study of 175 child murders by fathers in relation to contested custody showed that family courts had in many cases given the access they needed to murder their children, over the objections of the mother (Bartlow, 2017). It is possible that up to 1 in 8 child murders by parent may be reduced with the abolition of family courts (Department of Justice, 2005). And for every murder, there are many more suicides, and for every death, there are hundreds of injuries that require medical attention (World Health Organization, 2002). Yet, these numbers are an undercount, as near-universal record concealment, sometimes against the litigants themselves, makes it virtually impossible to track the true number of child murders family courts enable.

Even if the children survive, they are maximally exposed to lifelong psychological and physical illness, substance abuse, relationship problems, vulnerability to future abuse, as well as decades of loss of life, according to the highly-respected, nationwide study of Adverse Childhood Experiences (ACE) (Felitti et al., 2002). Not only that, when the "protective" parent loses custody for simply bringing up the abuse—which family courts universally take as false, even though false allegations being exceedingly rare (U.S. Department of Health and Human Services, 2010)—the children are stripped of the primary mitigating factor that could help them heal from the abuse: their primary support. Child abuse not only affects the current levels of violence in society but has measurable impacts on the levels of heart disease, cancer, obesity, high blood pressure, mental illness, substance abuse, crimes, suicides, and life expectancy (Petruccelli et al., 2019). The economic cost of child abuse and neglect in the United States was estimated at 592 billion dollars in 2018 (Klika et al., 2020).

The public is unaware of this epidemic of violence occurring through the family courts, because judges threaten reporters and journalists to control their coverage. When a major magazine published an interview with me, the judge in my sister's case issued an order for them immediately to "unpublish" the article. When their legal department sternly rebuked her for violating the First Amendment, she rather returned to her drawing board and issued a second order! It turned out that even the *Washington Post* had shamed her 10 years ago for trying to order the takedown of another article (Volokh, 2015), but because of impunity, she remains undaunted and her constitutional violations continue. The end result is that this magazine and others vow never to cover a family court story again.

Recently, the United Nations (2023) issued a major Human Rights Council report, decrying the public health crisis that has emerged from the U.S. model being exported around the globe, but nothing has changed within the U.S.—if anything, family courts have stubbornly "doubled down" on their practices and become even more severe.

What is the solution?  Correction is not going to come from the source of the problem.  There needs to be significant judicial oversight at nationwide scale, and I am encouraged that Arizona is leading the way.  Oversight may occur in the form of open courts, actual accountability, journalistic reporting, access for scientists, and whistleblowing protection for experts.  Education of the public is essential; I am doubtful of the utility of educating judges, unless the incentive to give children to the wrong parents for the proliferation of profits is removed.

Absolute immunity must not be allowed where there is corruption, fraud, and routine felony crimes such as child abuse, kidnapping, and even murder.  Judges and their court-appointed personnel must be indictable like everyone else when they cause the deaths of children and their loving parents.  Too many previously healthy young mothers are dying of suicide, heart attacks, "broken heart syndrome," cancer, and other medical conditions seen almost nowhere else (Dalgarno et al., 2024).  If this system of utter impunity, gross abuses of power, and rampant criminality, concealed under self-imposed secrecy cannot be eliminated, we must consider abolishing family courts altogether.  Family violence cases are not complicated, and they can be adjudicated quickly in criminal courts, instead of being drawn out for years if not decades in family courts, for the sole benefit of the court players.  If not, family courts have the potential to become the scourge of our society, as they have already become the epicenter of the greatest crimes being committed against innocent children and loving parents on U.S. soil.

## References

Bartlow, R. D. (2017).  Judicial response to court-assisted child murders.  *Family and Intimate Partner Violence Quarterly*, 10(1), 7-54.

Berger, P. (2014, August 1).  Divorce is big business.  *Hawaii Business Magazine*.  https://www.hawaiibusiness.com/divorce-is-big-business/

Center for Judicial Excellence (2025).  *Child Safety First: Preventing Child Homicides During Divorce, Separation, and Child Custody Disputes*.  San Rafael, CA: Center for Judicial Excellence.  https://centerforjudicialexcellence.org/2023/07/17/cje-releases-child-safety-report/

Dalgarno, E., Ayeb-Karlsson, S., Bramwell, D., Barnett, A., and Verma, A. (2024).  Health-related experiences of family court and domestic abuse in England: A looming public health crisis.  *Journal of Family Trauma, Child Custody and Child Development*, 21(3), 277-305.

Dreyfus, H. (2023, August 19).  In the child's best interest.  *ProPublica*.  https://www.propublica.org/article/both-parents-agree-child-is-being-harmed-who-will-courts-believe

Felitti, V. J., Anda, R. F., Nordenberg, D., Williamson, D. F., Spitz, A. M., Edwards, V., and Marks, J. S. (1998).  Relationship of childhood abuse and household dysfunction to many

of the leading causes of death in adults: The Adverse Childhood Experiences (ACE) Study. *American Journal of Preventive Medicine*, 14(4), 245-258.

Friedman, G. (2019, September 18).  Fatal Court: 'The Harm to Children in the Nation's Family Courts Has Reached Crisis Proportions.'  *Deseret News*. https://www.deseret.com/2019/9/17/20805882/fatal-family-court-parental-rights-custody-battles-child-deaths-harm-center-for-judicial-excellence

George Washington University (2021).  *Draft Summary: Overview of Family Court Outcomes Study*.  Washington, DC: National Institute of Justice. https://www.ojp.gov/pdffiles1/nij/grants/302141.pdf

Goldstein, B. (2013). What can be learned from court-assisted murder cases? *Family and Intimate Partner Violence Quarterly*, 5(4), 369-378.

Klika, J. B., Rosenzweig, J., and Merrick, M. (2020).  Economic burden of known cases of child maltreatment from 2018 in each state.  *Child and Adolescent Social Work Journal*, 37, 227-234.

Lee, B. X. (2019).  *Violence: An Interdisciplinary Approach to Causes, Consequences, and Cures*. New York, NY: Wiley-Blackwell.

Lee, B. X. (2025).  Dr. Bandy Lee files lawsuit with impeachment initiative to bring transparency to Star Chamber-like family court.  *Medium*.  https://medium.com/@bandyxlee/dr-bandy-lee-files-lawsuit-with-impeachment-initiative-to-bring-transparency-to-star-chamber-like-312f695f62fb

M. B. (2024, June 19).  Petition to Impeach Judge Jane Gallina-Mecca.  *Change.org*. https://www.change.org/p/petition-to-impeach-judge-jane-gallina-mecca

Frosch, D. (2024, August 24).  A court-ordered therapy that separates kids from a parent they love stirs a backlash.  *Wall Street Journal*.  https://www.wsj.com/us-news/reunification-therapy-custody-family-court-5b4e9279

Meier, J. S. (2020).  U.S. child custody outcomes in cases involving parental alienation and abuse allegations: What do the data show?  *Journal of Social Welfare and Family Law*, 42(1), 92-105.

Petruccelli, K., Davis, J., and Berman, T. (2019).  Adverse childhood experiences and associated health outcomes: A systematic review and meta-analysis.  *Child Abuse and Neglect*, 97, 104127.

Raphael, J. (2020). Parents as pimps: Survivor accounts of trafficking of children in the United States. Dignity: A Journal of Analysis of Exploitation and Violence, 4(4), 7.

Silberg, J. (2008).  *How Many Children Are Court-Ordered into Unsupervised Contact with an Abusive Parent after Divorce?*  Baltimore, MD: Leadership Council. http://www.leadershipcouncil.org/1/med/PR3.html

Salter, M., and Wong, T. (2024).  Parental production of child sexual abuse material: A critical review.  *Trauma, Violence, and Abuse*, 25(3), 1826-1837.

Spinak, J. M. (2023).  *The End of Family Court: How Abolishing the Court Brings Justice to Children and Families*.  New York, NY: New York University Press.

Sprang, G., and Cole, J. (2018).  Familial sex trafficking of minors: Trafficking conditions, clinical presentation, and system involvement.  *Journal of Family Violence*, 33, 185-195.

Summers, H. (2023, July 6).  Family Court Files: Parental alienation 'used to silence claims of abuse.'  *Bureau of Investigative Journalism*.  https://www.thebureauinvestigates.com/stories/2023-07-06/family-court-files-parental-alienation-used-to-silence-claims-of-abuse

Thomas, E. (2023, September 4).  Family courts: Children forced into contact with fathers accused of abuse.  *BBC News*.  https://www.bbc.com/news/uk-66531409

United Nations (2023).  *Custody, Violence against Women and Violence against Children: Report of the Special Rapporteur on Violence against Women and Girls, Its Causes and Consequences, Reem Alsalem*.  New York, NY: United Nations Human Rights Council.  https://www.ohchr.org/en/documents/thematic-reports/ahrc5336-custody-violence-against-women-and-violence-against-children

U.S. Department of Health and Human Services (2010).  *Child Maltreatment 2010*.  Washington, DC: U.S. Department of Health and Human Services.  http://www.acf.hhs.gov/programs/cb/stats_research/index.htm

U.S. Department of Justice (2005).  *Family Violence Statistics*.  Washington, DC: Bureau of Justice Statistics.  https://bjs.ojp.gov/content/pub/pdf/fvs03.pdf

Volokh, E. (2015, May 31).  New Jersey judge orders newspaper to take down article.  *Washington Post*.  https://www.washingtonpost.com/news/volokh-conspiracy/wp/2015/05/31/new-jersey-judge-orders-newspaper-to-take-down-article/

World Health Organization (2002).  *World Report of Violence and Health*.  Geneva, Switzerland: World Health Organization.  https://www.who.int/publications/i/item/9241545615

# Exhibit A



6/09/25

To whom it may concern:

I have been Patricia Lee's (DOB: ████████) psychiatrist since I evaluated her on 4/24/25 and again on 5/29/25 at Amen Clinics in New York City. I am writing to you to support her request for a remote appearance for court hearings and ADA support during appearances (including a note taker, mental health advocate and medical doctor, preferably her sister), given the life-threatening risk she faces during court proceedings, which have exacerbated her PTSD symptoms. Her PTSD symptoms including periods of "freezing", with catatonia and muscle paralysis, leading to a physical inability to move and risk for falls and malignant hypertension (which has led to inpatient medical hospital treatment in the past). Her PTSD condition has become even more difficult since the judge on her case has apparently expressed an intention to remove her temporary restraining order (TRO) against her husband, who has reportedly been continuously attempting to cause her severe harm (and reportedly trying to murder her). The last time a TRO was removed by this judge, he kidnapped her children, and she has been unable to hear from or see them for four years.

The extreme stress she has been under has necessitated eight hospitalizations, including one ICU admission, and she was diagnosed with perivascular ischemic changes due to stress-induced high blood pressure, which has caused an increased risk of stroke. Evidence of brain injury which occurred at that time (December 2024) was found during my evaluation of Patricia.

SPECT brain imaging done on 4/2/25 and 4/7/25 shows abnormal activity consistent with diffuse traumatic brain injury (ICD 10 CODE: S06.2X0S) as well as findings associated with Post-Traumatic Stress Disorder (ICD 10 CODE: F43.12).

Her new-onset struggles with memory and executive functioning require additional ADA support in addition to what she has had so far, including an ADA advocate of her choice and a mental health advocate of her choice, especially if a trauma-informed judge cannot be assigned.

Please contact me if you need any additional information.

Sincerely,

Michael Grin, M.D.
NPI# 1774556930
Amen Clinics
Phone: 646-736-3110
Email: drgrinasst@amenclinic.com

**Amen Clinics New York** | 16 East 40th St., 9th Floor | New York, NY 10016 | P 646-736-3110 | F 949-236-8691

**www.amenclinics.com** | **Atlanta** | **Chicago** | **Northern California** | **Northwest** | **Southern California** | **Washington, D.C.**

**George Drinka, MD**
**Physician**
**Adult and Child Psychiatry**
**2250 NW Flanders, Suite 306, Portland, Oregon 97210**

To Whom it May Concern:

I met with Patricia Lee (DOB: 11/30/1974) on Saturday February 8th, 2025 via Zoom for fifty minutes. Of note is that although she spoke to me in a much more coherent and engaged manner than she has the past two time when we met, she now suffers from severe medical symptoms including an inability to walk, weakness in her arms and inability to control her bladder. She suffers from sudden episodes of dangerously high blood pressure.

All these symptoms worsen when she has any contact with the judge involved in her divorce or her ex-husband or receives any upsetting communications about the terms of the divorce. Recently she was medically hospitalized for many days and underwent extensive testing. Though the hospital doctors recommended that she remain in the hospital due to the severity and indeed life-threatening nature of these symptoms, she opted to return home under the care of her sister.

There she very recently experienced a terrifying disruption of her life when the bottom step to a flight of stairs up to her door was mysteriously destroyed. Since her ex-husband was then threatening to appear at the house and throw her out, her symptoms had worsened, and so she insisted on conducting our session with the lights turned out due to the fear that he might appear and harm her. With the aid of her attorney, she was able to initiate a Temporary Restraining Order against her ex-husband.

My clinical impression is that Patricia remains in grave danger due to the severity of her symptoms which seem to be driven by psycho-social stress related to the divorce and any contact with both her ex-husband and the judge in the divorce, who for inexplicable reasons remains involved in this case even after the divorce has been completed.

I strongly recommend the following:

1.  The TRO should become a longer-term restraining order with intermittent reviews that bear in mind the severe nature of Patricia's physical and indeed life-threatening symptoms.
2.  I also suggest that the judge in the divorce case be removed from authority over this case and that the case be reviewed by another judge.
3.  I recommend that Patrica work to regain her health insurance so that she can continue in therapy with the psychiatrist whom she had been seeing in the past.

If you have any questions or concerns, please contact me at 503-226-0558.

Respectfully,

George Drinka, MD

# Stephanie Brandt MD

Adult, child and adolescent psychiatry,and psychoanalysis
Forensic evaluation and consultation
350 Central Park West
Apt 13-I
New York, NY
10025

Tel:( 212) 996 -0698
Fax: (917) 591-5165

sab2009@med.cornell.edu
........................................................................................

Ms. Jennifer Eaton
Richard J. Hughes Complex
P.O. Box 006
Trenton, NJ 08625-0970

Re: Ms. Patricia Lee
Docket # A-001621-22

October 7, 2024

Dear Ms. Eaton

I am writing to you in support of my patient, Ms. Patricia Lee who has been asked to appear in person for oral argument in her case. I have treated Ms. Lee for over a year as I indicated in a prior communication. ( See attached )

It is my unequivocal psychiatric opinion that she suffers from what is a quite severe case of complex ( chronic) post traumatic stress disorder . **This is a normal persons response to an abnormal and overwhelming experience.** It is NOT a

1

mental illness like any other. It resolves when there is no further traumatization and it can be expected to relapse and worsen during litigation which is often a trigger.

In her case the traumatic events that have prompted this are 1. The loss of any contact with her children, even including visitiation for years. 2. The lack of  any clarity for her about the basis of this decision that resulted in her loss of custody 3. The ongoing continuous mutiple areas of litigation for which she must prepare and participate.

Her symptoms of  C PTSD are quite intense, <u>potentially medically dangerous</u>, and they are of course frightening to her. They are often somatic in nature. PTSD is characterized by the following symptoms:
1. Avoidant responses ie inability to remember or think about aspects of the traumatic context(NB:  I believe that her difficulty in getting to the point or remembering sequence was grossly misunderstood as evidence of a thought disorder and therefore some form of mental illness. That is absolutely incorrect. The so called  'diagnosis' of tangentiality is NOT a diagnosis at all.  Most people are tangential when they are anxious – that is all it means.It is a descriptive term.)
 2. Intrusive thoughts and preoccuption with the trauma , as well as flashbacks that can be quite hard to manage. They can look like emotional dyscontrol due to other causes. In this case however, there is no other cause. She does not suffer from any other mental illness that would impair her ability to regulate her emotions.
 3. Somatic reactions like a startle reaction, sleep disturbance and importantly in her case <u>exacerbation of underlying medical problems.</u> PTSD is associated with the emergence of very significant health problems and even a shortened life expectancy. Ms. Lee has significant labile hypertension  ie high blood pressure which is hard to control. For her, a PTSD relapse ,which is a predictable reaction to any court appearance, carries with it the possibility of worsening her medical condition. If her blood pressure is raised above a certain level she is then at real risk of cardiac arrest and stroke. It is very important for the Court to understand that her concerns about her health and the potential for a cardiac emergency are NOT fabricated whatsoever. It is quite reasonable for her to be concerned about this danger.

PTSD is by now a well known disorder. Most people know about 'fight/flight 'reactions and ' freezes' in response. However, it is less well known that a relapse can also cause a ' shut down'  - an inability to respond. This should NOT be confused with any voluntary refusal to participate. It is a well known and frightening consequence of PTSD that can easily be misunderstood as indicating intentional opposition and refusal. Ms.  Lee is NOT refusing to participate. This is not the reason for her reluctance. It must be made clear that instead she is weighing the very sigificant health risk that it imposes on her and trying to mitigate it to the extent possible.

Because of the potential for a 'shut down response' and more importantly **the very serious medical risk that a PTSD relapse poses for Ms. Lee**, I am recommending that her appearance in Court be delayed.

Please feel free to contact me for any further information about my patient. I can be reached at the address, and email above.


Sincerely,


Stephanie Brandt MD

# Exhibit B

**OrthoNJ**
RIDGEWOOD ORTHOPEDIC GROUP

Visit Note - April 28, 2025

| | | | | | |
|---|---|---|---|---|---|
| PMS ID: 113646 | Sex: PAT000447565 Female | DOB: | Phone: (917) 449-6555 | MRN: MM0000240340 |

## Allergies
No known drug allergies

## Medications
baclofen 10 mg Oral - tablet
hydrochlorothiazide 25 mg Oral - tablet
olmesartan 40 mg Oral - tablet

## Medical History
None

## Musculoskeletal History
None

## Musculoskeletal Family History
None

## Musculoskeletal Surgery
Other: Two c-sections

## Surgical History
Other: Two c-sections

## Social History
Single Question Alcohol Screening: 0 days
Exercise: Other
EtOH none
Smoking status - Never smoker
Driving status:
Drives in the Daytime

## Chief Complaints:
1.   Left Knee

## HPI: This is a 50 year old female who:
1.   is here for an evaluation of her left knee pain. She felt a pop on her knee while playing Tennis about 3 months ago. She reinjured her knee when she twisted her knee about 2 weeks ago. She has clicking, swelling, and tightness. She uses a cane sometimes when her pain is at its worst. She uses ice and heating pad PRN which is not helping. She takes Baclofen PRN which helps. She stretches and massages her knee.

The patient reports she is going through a very stressful divorce at this time.  She recently had an episode of "total body paralysis."  After an extensive medical workup her doctors told her they felt it was secondary to emotional stress.

## Vitals:

| Date | Taken By | B.P. | Pulse | Resp. | O2 Sat. | Temp. | Ht. | Wt. | BMI | BSA |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/28/25 15:56 | Serrano-06, Heidee | | | | | | 63.0 in* | 147.0 lbs* | 26 | 1.7 |
| | FiO2 | | | | | | | | | |

* Patient Reported

## Exam:

### Exam

Exam findings notable for the following:

Physical exam of the left knee reveals tenderness along the medial joint line. Range of motion from 0 to 140 degrees of flexion. The knee is stable to varus and valgus stress. Negative anterior and posterior drawer.

## Tests

**Order Plain X-ray/Interpretation**

----------
DETAILS

Indication/Diagnosis: Knee Pain, Left - M25.562
Medical Necessity: Diagnostic Purposes
----------
Provider: Anthony Delfico, MD
Perform at: Medstrat
Priority: Normal

Facility: In-house
----------
The following images were ordered and obtained:
----------
LOWER EXTREMITY
LEFT: 3 Views, Knee
Weight-bearing: Yes
LEFT, Initial: Knee, 3 views; CPT 73562

**Anthony Delfico, MD (Primary Provider) (Bill Under)**
(201) 445-2830 Work
(201) 445-7471 Fax

OrthoNJ Ridgewood
85 South Maple Ave
Ridgewood, NJ 07450-4561

Page 1

**OrthoNJ**
RIDGEWOOD ORTHOPEDIC GROUP

**Lee, Patricia**

**Visit Note - April 28, 2025**

| PMS ID: | Sex: | DOB: | Phone: | MRN: |
|---|---|---|---|---|
| 113646PAT000447565 | Female | ▉▉▉▉ | (917) 449-6555 | MM0000240340 |

INTERPRETATION(S)
Findings:
 • AP lateral and merchant view x-rays of the left knee were ordered, performed here and reviewed by me today and show mild to moderate medial joint space narrowing.

## Impression/Plan:

1. **Knee Pain, Left**
   Pain in left knee (M25.562)

2. **Knee Osteoarthritis, Left**
   Unilateral primary osteoarthritis, left knee (M17.12)
   located on the left knee joint.

   **Plan: PT/OT Rx.**
   Physical and/or Occupational Therapy Prescription

   Indication: Knee Osteoarthritis, Left - left knee joint - M17.12
   Instructions: evaluate and treat per diagnosis/objective exam
   Recommend frequency of 2 times  per week for 6 weeks.
    - Therapeutic Exercises: All exercises prn per therapist.
    - Manual Therapy: All manual therapy prn per therapist.
    - Modalities: All modalities prn per therapist. All modalities prn per therapist.

   Provider: Anthony Delfico, MD
   Priority: normal

## Follow up in 2 months

## Staff:

Anthony Delfico, MD (Primary Provider)  (Bill Under)

Heidee Serrano-06

---

Electronically Signed By: Anthony Delfico, MD, 04/29/2025 08:53 AM EDT

**Anthony Delfico, MD (Primary Provider) (Bill Under)**
(201) 445-2830 Work
(201) 445-7471 Fax

OrthoNJ Ridgewood
85 South Maple Ave
Ridgewood, NJ 07450-4561

Page 2



27 Edgewater Towne Ctr · Edgewater, NJ 07020
ph: 888-663-6331 · fax: 415-252-7176

April 3, 2025

Patricia Lee, DOB: 

To Whom It May Concern:

Based on my evaluation of Patricia Lee's current health condition via a remote video visit with her and her sister (who is also her 24-hour caretaker), please excuse Patricia from her court date of Friday, April 4th 2025.

After review of submitted documentation and previous medical reports, Patricia suffers from hypertension that becomes dangerously high when it comes to news, updates, or matters involving her divorce process from her ex-husband, whose temporary restraining order may be dropped soon. Contact with the judge involved in her divorce case and mention of her ex-husband cause Patricia severe distress, which exacerbates her PTSD, bodily weakness, limitations with mobility, and hypertension.

In my clinical opinion based on this remote video visit and the documentation provided and reviewed, Patricia's health remains in danger due to severity of what her symptoms become due to the psychosocial stress related to her divorce, contact with her ex-husband, and the judge involved in her divorce case.

Sincerely,

Rutul Amin, DO
NPI: 1396366183

Miracle Healing Hands

2500 Lemoine Avenue

Fort Lee, NJ 07024

February 21, 2025

To Whom It May Concern,

I have been treating Mrs. Patricia Lee since 2017 for progressive muscle tightness caused by long-term domestic abuse. My treatments focus on prevention through Meridian mind-body therapy and stress reduction.

In 2021, Mrs. Lee experienced a sudden and severe worsening of her symptoms following a traumatic event: her abusive husband used legal tactics to take her children from her. This devastating loss triggered a chain of physical reactions, as the body absorbs emotional trauma deeply. It manifests in muscular rigidity, especially in the heart, shoulders, and lower back, as well as autonomic dysfunction and systemic stress responses. The nervous system, unable to resolve the trauma, has kept her body in a constant state of distress, affecting circulation, energy flow, and organ function.

In December 2024, a divorce outcome made this loss permanent, causing further deterioration. Mrs. Lee has now been hospitalized and is unable to care for herself at home. Her symptoms have progressed to muscle paralysis, dangerously unstable blood pressure, and systemic dysfunction, all of which are direct consequences of the unresolved trauma. Without resolution, her body remains locked in a survival state, where treatment can provide only minimal relief.

As I have informed Mrs. Lee, addressing the root causes of her distress is essential. Without it, her life will remain at risk.

Sincerely,

Susan Kyong

**Michael H Stone M.D.**

**225 Central Park West, Suite 114**

**New York City, New York 10024**

Prof. of Clinical Psychiatry

Columbia College of

Physicians and Surgeons

Phone:917-750-8612

Fax: 212-362-3997

Email: michaelhstonemd@gmail.com

NPI: 111-405-7437

4 April 2022

To Whom It May Concern                                    In re:    Patricia Lee

It has come to my attention that Ms. Lee has been asked to attend an "in-person" hearing in Court this coming Thursday, April 7th.

Ms. Lee's physical health has of late deteriorated seriously (having worsened actually- since November 2021). She has become extremely vulnerable to hypertensive ["high blood-pressure"] crises, especially in relation to life-situations of considerable stress. Recently for example, she was ordered to appear in Court, the anticipation of which precipitated a hypertensive crisis, in which her systolic blood pressure suddenly spiked to above 200, such that she had to be taken to a hospital emergency room. The physicians there were aware that she was at risk for suffering a heart attack. Fortunately, she did not suffer a cardiac crisis of that sort - but the physicians did prescribe anti-hypertensive medication for her, in hopes of decreasing her blood pressure to safer levels. Ms. Lee, has remained at risk, nevertheless, for sudden lethal-level blood pressure increases – particularly in response to situations of unusual stress. The Court having ruled that her two children must remain with their father (despite Ms. Lee's excellence as a mother, and despite the children's marked and stated preference to being with their mother) would itself create, yet again, severe stress such as could quickly bring about another life-threatening hypertensive crisis.

For these reasons, I am urgently requesting - in hopes of averting any such threat to Ms. Lee's health – and to even her survival – that she may be excused from appearing in person at Court. It would be possible, however, and acceptable to her, that she attend via Zoom.

Respectfully yours,

*Michael H Stone MD*

Michael H Stone, M.D.

# BARRY H. ROTH, MD

***Diplomate of the American Boards of Psychiatry and Neurology & Preventive Medicine Certifications** in* **Psychiatry**

**Addiction Medicine   Addiction Psychiatry   Geriatric Psychiatry   Forensic Psychiatry**

320 Washington St., 4th Floor, Brookline, MA 02445-6873
Telephone: (617) 734-3572 Fax: (617) 734-2757

**Dr. Jill Jones Soderman**
Director, Foundation for Child Victims of the Family Courts
10001 Avenue of the Americas, 11th Floor
New York, New York 10018

**Re: Chan v. Lee, FM-02-754-21**

April 10, 2022

Dear Dr. Soderman,

I state the following with medical certainty, with the information currently available to me, reserving the right to amend my opinion in the face of new information. Please refer to my letter to Ms. Patricia Lee, *Pro Se Litigant*, of April 6, 2022.

***Ms. Patricia Lee, for at least four weeks prior to April 7, 2022, has experienced, and continues to experience, severe and unbearable pain and suffering, caused by state actors, for which in-person appearance in the Bergen County Chancery Family Court represented an unacceptable clinical risk of mortal outcome, with medical risk of unknown and potentially lethal outcome.***

I have come to these conclusions using standard operating procedure[1],[2] by a preponderance of the evidence, to a reasonable degree of medical certainty.

Sincerely,

Barry H. Roth, MD

# Exhibit C

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▮▮▮▮▮▮ Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

**11/10/2021 - ED in HUMC Emergency Trauma Center**

**ED Provider Note**

ED Provider Notes by Edward Yamin, MD at 11/10/2021 1708

| Author: Edward Yamin, MD | Service: Emergency Medicine | Author Type: Physician |
| Filed: 11/10/2021 19:08 | Date of Service: 11/10/2021 17:08 | Status: Signed |
| Editor: Edward Yamin, MD (Physician) | | |



Hackensack
Meridian *Health*
Hackensack University
Medical Center

# Hackensack University Medical Center
## *Department of Emergency Medicine*

Demographic Information:
Patient Name: Patricia Lee
Date of Birth: ▮▮▮▮▮▮
Medical Record Number: 105334483
Age: 46 y.o.
Sex: female

## Chief Complaint

Chief Complaint
Patient presents with
· Chest Pain

## History of Present Illness

HPI
**46-year-old female without significant past medical history complains of a chest pain across her chest that radiated to the left shoulder which occurred earlier today. Patient states she has been under a lot of stress secondary to her husband who is abusing HER CHILDREN. She has been to child protective services. She has notified authorities. Her sister at bedside states that her husband is blocking any legal actions towards her. lasting approximately half hour. Pain was sharp no associated nausea vomiting shortness of breath or fever. No cough. Had a negative stress test which was performed at Valley Hospital on Monday. She has no family history for CAD both parents are alive and well without CAD no siblings with CAD.**

Past Medical History:
Past Medical History:

| Diagnosis | Date |
| --- | --- |
| · Hypertension | |

Past Surgical History:History reviewed. No pertinent surgical history.

Social History:
Social History

Printed on 1/24/22 1508

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ███████ Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

### 11/10/2021 - ED in HUMC Emergency Trauma Center (continued)

**ED Provider Note (continued)**

Socioeconomic History:
- Marital status:              Not on file
    Spouse name:              Not on file
- Number of children:         Not on file
- Years of education:         Not on file
- Highest education level:    Not on file

Occupational History
- Not on file

Tobacco Use
- Smoking status:             Never Smoker
- Smokeless tobacco:          Not on file

Substance and Sexual Activity
- Alcohol use:                Not on file
- Drug use:                   Not on file
- Sexual activity:            Not on file

Other Topics                  Concern
- Not on file

Social History Narrative
- Not on file

**Social Determinants of Health**

Financial Resource Strain:
- Difficulty of Paying Living Expenses: Not on file

Food Insecurity:
- Worried About Running Out of Food in the Last Year: Not on file
- Ran Out of Food in the Last Year: Not on file

Transportation Needs
- Lack of Transportation (Medical): Not on file
- Lack of Transportation (Non-Medical): Not on file

Physical Activity:
- Days of Exercise per Week: Not on file
- Minutes of Exercise per Session: Not on file

Stress:
- Feeling of Stress : Not on file

Social Connections:
- Frequency of Communication with Friends and Family: Not on file
- Frequency of Social Gatherings with Friends and Family: Not on file
- Attends Religious Services: Not on file
- Active Member of Clubs or Organizations: Not on file
- Attends Club or Organization Meetings: Not on file
- Marital Status: Not on file

Intimate Partner Violence:
- Fear of Current or Ex-Partner: Not on file
- Emotionally Abused: Not on file
- Physically Abused: Not on file
- Sexually Abused: Not on file

Housing Stability:
- Unable to Pay for Housing in the Last Year: Not on file
- Number of Places Lived in the Last Year: Not on file

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ████████, Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

**11/10/2021 - ED in HUMC Emergency Trauma Center (continued)**

ED Provider Note (continued)

· Unstable Housing in the Last Year: Not on file


Family History: NC


# Review of Systems

Review of Systems
Constitutional: Negative.
HENT: Negative.
Eyes: Negative.
Respiratory: Negative.
Cardiovascular: Positive for chest pain.
Gastrointestinal: Negative.
Genitourinary: Negative.
Musculoskeletal: Negative.
Skin: Negative.
Neurological: Negative.
Hematological: Negative.
Psychiatric/Behavioral: Negative.
All other systems reviewed and are negative.


# Physical Exam
Physical Exam
Vitals and nursing note reviewed.
Constitutional:
  Appearance: Normal appearance.
HENT:
  Head: Normocephalic and atraumatic.
  Mouth/Throat:
  Mouth: Mucous membranes are moist.
Eyes:
  Extraocular Movements: Extraocular movements intact.
  Pupils: Pupils are equal, round, and reactive to light.
Cardiovascular:
  Rate and Rhythm: Normal rate and regular rhythm.
  Pulses: Normal pulses.
  Heart sounds: Normal heart sounds.
Pulmonary:
  Effort: Pulmonary effort is normal.
  Breath sounds: Normal breath sounds.
Abdominal:
  General: Bowel sounds are normal. There is no distension.
  Palpations: Abdomen is soft.
  Tenderness: There is no abdominal tenderness.
Musculoskeletal:

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▮▮▮▮ Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

**11/10/2021 - ED in HUMC Emergency Trauma Center (continued)**

**ED Provider Note (continued)**

General: Normal range of motion.
Cervical back: Neck supple.
Skin:
  General: Skin is warm and dry.
  Capillary Refill: Capillary refill takes less than 2 seconds.
Neurological:
  General: No focal deficit present.
  Mental Status: She is alert and oriented to person, place, and time.
Psychiatric:
  Mood and Affect: Mood normal.

## Diagnostic Interpretation

ECG: NSR 90 no acute ischemic changes
Labs wnl

## Assessment & Plan

MDM: 45 female with low heart score atypical chest pain negative stress test 2 days ago if troponin EKG and chest x-ray are negative patient may be discharged with close follow-up is well-appearing
Stress related hypertension.
Diagnosis: Atypical chest pain htn
Disposition: discharge

Edward Yamin, MD
11/10/21 1908

Electronically signed by Edward Yamin, MD at 11/10/2021 19:08

**Lab Orders & Results**

**EXTRA TUBES [448454705] (Discontinued)**

| Electronically signed by: **Edward Yamin, MD on 11/11/21 0924** | | Status: **Discontinued** |
|---|---|---|
| Mode: Ordering in Individual Order Protocol mode | Communicated by: Oleg Shames, RN | |
| Ordering user: Oleg Shames, RN 11/10/21 1636 | Ordering provider: Edward Yamin, MD | |
| Authorized by: Edward Yamin, MD | Ordering mode: Individual Order Protocol | |
| Frequency: STAT STAT - One Time 11/10/21 1637 - 1 occurrence | Class: Unit Collect | |
| Quantity: 1 | Instance released by: Oleg Shames, RN (auto-released) 11/10/2021 16:36 | |

Discontinued by: Oleg Shames, RN 11/10/21 1636 [Ordered in Error]

Questionnaire

| Question | Answer |
|---|---|
| Release to patient | Standard release |
| Grey Top | No Labels |
| Red Top | No Labels |
| Green Top | No Labels |
| Lavender Top | No Labels |
| Yellow ACD | No Labels |

Printed on 1/24/22 1508

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▮▮▮▮▮▮ Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

## 11/10/2021 - ED in HUMC Emergency Trauma Center (continued)

### Lab Orders & Results (continued)

| | |
|---|---|
| SST | No Labels |
| Lt Blue Na Citrate | 1 Label |
| Pink EDTA | No Labels |
| Urine Container | No Labels |
| Urine Culture Container | No Labels |

#### Specimen Information

| ID | Type | Source | Collected By |
|---|---|---|---|
| — | Blood | Arm, Left | 11/10/21 1636 |

### LT BLUE TOP NA CITRATE [448454707] (Discontinued)

Status: Discontinued

Order placed as a reflex to Obtain Extra Blue tubes ordered on 11/10/21 at 1636
Ordering user: Oleg Shames, RN 11/10/21 1636
Authorized by: Edward Yamin, MD
Frequency: Timed Once 11/10/21 1637 - 1  occurrence
Quantity: 1
Ordering provider: Edward Yamin, MD
Ordering mode: Standard
Class: Unit Collect
Instance released by: Oleg Shames, RN (auto-released)
11/10/2021 16:36

Discontinued by: Oleg Shames, RN 11/10/21 1636 [Ordered in Error]

#### Questionnaire

| Question | Answer |
|---|---|
| Release to patient | Standard release |

#### Specimen Information

| ID | Type | Source | Collected By |
|---|---|---|---|
| — | Blood | — | 11/10/21 1636 |

### COMPREHENSIVE METABOLIC PANEL [448454702] (Final result)

Status: **Completed**

Electronically signed by: **Edward Yamin, MD on 11/11/21 0924**
Mode: Ordering in Individual Order Protocol mode
Ordering user: Oleg Shames, RN 11/10/21 1636
Authorized by: Edward Yamin, MD
Frequency: STAT STAT - One Time 11/10/21 1637 - 1  occurrence
Quantity: 1
Instance released by: Oleg Shames, RN (auto-released) 11/10/2021 16:36
Communicated by: Oleg Shames, RN
Ordering provider: Edward Yamin, MD
Ordering mode: Individual Order Protocol
Class: Unit Collect
Lab status: Final result

#### Questionnaire

| Question | Answer |
|---|---|
| Release to patient | Standard release |

#### Specimen Information

| ID | Type | Source | Collected By |
|---|---|---|---|
| 21HU-314CH01252 | Blood | — | Alyssa Ann Giuffrida 11/10/21 1653 |

#### Comprehensive Metabolic Panel [448454702] (Abnormal)

Resulted: 11/10/21 1742, Result status; Final result

Ordering provider: Edward Yamin, MD 11/10/21 1636
Filed by: Background User Lab 11/10/21 1742
Resulting lab: HUMC HOSPITAL LAB
Narrative:
Order status: Completed
Collected by: Alyssa Ann Giuffrida 11/10/21 1653

| GFR ml/min | with/without kidney damage |
|---|---|
| 30-59 | Stage 3 |
| 15-29 | Stage 4 |
| <15(or dialysis) | Stage 5 |

The GFR estimate is not accurate for values >=60 ml/min or for GFR Stage 1 or Stage 2

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: █████, Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

## 11/10/2021 - ED in HUMC Emergency Trauma Center (continued)

### Lab Orders & Results (continued)

#### Components

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| Sodium | 141 | 136 - 145 mmol/L | — | HUMCLab |
| Potassium | 4.2 | 3.5 - 5.1 mmol/L | — | HUMCLab |
| Chloride | 106 | 98 - 107 mmol/L | — | HUMCLab |
| Glucose | 100 | 74 - 100 mg/dL | — | HUMCLab |
| BUN | 10 | 7 - 19 mg/dL | — | HUMCLab |
| Albumin | 2.8 | 3.5 - 5.2 g/dL | L ▾ | HUMCLab |
| Bilirubin, Total | 0.4 | 0.2 - 1.2 mg/dL | — | HUMCLab |
| Calcium | 9.3 | 8.4 - 10.2 mg/dL | — | HUMCLab |
| Creatinine | 0.6 | 0.3 - 1.5 mg/dL | — | HUMCLab |
| Alkaline Phosphatase | 60 | 40 - 150 U/L | — | HUMCLab |
| Protein, Total | 6.7 | 6.0 - 8.3 g/dL | — | HUMCLab |
| AST | 18 | 5 - 34 U/L | — | HUMCLab |
| Carbon Dioxide | 26 | 22 - 29 mmol/L | — | HUMCLab |
| ALT | 17 | 0 - 55 U/L | — | HUMCLab |
| EGFR, African-American | 139 | >=60 mL/min/1.73m*2 | — | HUMCLab |
| EGFR, Non African-American | 114 | >=60 mL/min/1.73m*2 | — | HUMCLab |
| AG Ratio | 0.7 | >1.0 | L ▾ | HUMCLab |
| Anion GAP | 13.2 | 10 - 20 | — | HUMCLab |

#### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 8 - HUMCLab | HUMC HOSPITAL LAB | Patrice Hassoun, MD | 30 Prospect Ave HACKENSACK NJ 07601 | 11/10/20 1257 - Present |

### CBC AND DIFFERENTIAL [448454703] (Final result)

Electronically signed by: Edward Yamin, MD on 11/11/21 0924                               Status: **Completed**
Mode: Ordering in Individual Order Protocol mode                    Communicated by: Oleg Shames, RN
Ordering user: Oleg Shames, RN 11/10/21 1636                         Ordering provider: Edward Yamin, MD
Authorized by: Edward Yamin, MD                                     Ordering mode: Individual Order Protocol
Frequency: STAT STAT - One Time 11/10/21 1637 - 1 occurrence        Class: Unit Collect
Quantity: 1                                                         Lab status: Final result
Instance released by: Oleg Shames, RN (auto-released) 11/10/2021 18:36

#### Questionnaire

| Question | Answer |
|---|---|
| Release to patient | Standard release |

#### Specimen Information

| ID | Type | Source | Collected By |
|---|---|---|---|
| 21HU-314HE00784 | Blood | --- | Alyssa Ann Giuffrida 11/10/21 1653 |

### CBC with Differential [448454703] (Abnormal)                    Resulted: 11/10/21 1722, Result status: Final result

Ordering provider: Edward Yamin, MD 11/10/21 1636         Order status: Completed
Filed by: Background User Lab 11/10/21 1722               Collected by: Alyssa Ann Giuffrida 11/10/21 1653
Resulting lab: HUMC HOSPITAL LAB

#### Components

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| White Blood Cells | 6.5 | 4.0 - 11.0 10*3/uL | — | HUMCLab |

Printed on 1/24/22 1508

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▮▮▮▮▮, Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

## 11/10/2021 - ED in HUMC Emergency Trauma Center (continued)

### Lab Orders & Results (continued)

| | | | | | |
|---|---|---|---|---|---|
| Red Blood Cells | 4.33 | 4.00 - 5.10 10*6/uL | — | | HUMCLab |
| Hemoglobin | 11.1 | 12.0 - 15.5 g/dL | L ˅ | | HUMCLab |
| Hematocrit | 34.6 | 36.0 - 46.0 % | L ˅ | | HUMCLab |
| Mean Corpuscular Volume | 80.0 | 80.0 - 100.0 fL | — | | HUMCLab |
| Mean Corpuscular Hemoglobin | 25.6 | 25.0 - 34.0 pg | — | | HUMCLab |
| Mean Corpuscular Hemoglobin Concentration | 32.0 | 32.0 - 36.0 g/dL | — | | HUMCLab |
| Red Cell Distribution Width | 15.6 | 11.5 - 15.5 % | H ˄ | | HUMCLab |
| Platelet Count | 305 | 135 - 430 10*3/uL | — | | HUMCLab |
| Mean Platelet Volume | 7.3 | 7.4 - 10.4 fL | L ˅ | | HUMCLab |
| Neutrophils, Percent | 71.60 | 40.00 - 75.00 % | — | | HUMCLab |
| Lymphocytes, Percent | 20.40 | 13.00 - 43.00 % | — | | HUMCLab |
| Monocytes, Percent | 6.00 | 0.00 - 13.00 % | — | | HUMCLab |
| Eosinophils, Percent Automated | 1.30 | 0.00 - 5.00 % | — | | HUMCLab |
| Basophils, Percent | 0.70 | 0.00 - 2.00 % | — | | HUMCLab |
| Neutrophils, Absolute | 4.60 | 1.80 - 8.00 10*3/uL | — | | HUMCLab |
| Lymphocytes, Absolute | 1.30 | 0.70 - 3.50 10*3/uL | — | | HUMCLab |
| Monocytes, Absolute | 0.40 | 0.50 - 0.90 10*3/uL | L ˅ | | HUMCLab |
| Eosinophils, Absolute | 0.10 | 0.00 - 0.70 10*3/uL | — | | HUMCLab |
| Basophils, Absolute | 0.0 | 0 - 0.2 10*3/uL | — | | HUMCLab |
| Nucleated Red Blood Cells | 0.00 | >=0.00 % | — | | HUMCLab |
| Nucleated Red Blood Cells | 0 | 0 - 5 % | — | | HUMCLab |

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 8 - HUMCLab | HUMC HOSPITAL LAB | Patrice Hassoun, MD | 30 Prospect Ave HACKENSACK NJ 07601 | 11/10/20 1257 - Present |

### TROPONIN [448454704] (Final result)

Electronically signed by: Edward Yamin, MD on 11/11/21 0924                    Status: **Completed**
Mode: Ordering in Individual Order Protocol mode                    Communicated by: Oleg Shames, RN
Ordering user: Oleg Shames, RN 11/10/21 1636                    Ordering provider: Edward Yamin, MD
Authorized by: Edward Yamin, MD                    Ordering mode: Individual Order Protocol
Frequency: STAT STAT - One Time 11/10/21 1637 - 1  occurrence                    Class: Unit Collect
Quantity: 1                    Lab status: Final result
Instance released by: Oleg Shames, RN (auto-released) 11/10/2021 16:36

#### Questionnaire

| Question | Answer |
|---|---|
| Release to patient | Standard release |

#### Specimen Information

| ID | Type | Source | Collected By |
|---|---|---|---|
| 21HU-314CH01252 | Blood | — | Alyssa Ann Giuffrida 11/10/21 1653 |

### Troponin I [448454704] (Normal)                    Resulted: 11/10/21 1806, Result status: Final result

Ordering provider: Edward Yamin, MD  11/10/21 1636                    Order status: Completed
Filed by: Scott W Davidson  11/10/21 1806                    Collected by: Alyssa Ann Giuffrida 11/10/21 1653
Resulting lab: HUMC HOSPITAL LAB

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▮▮▮▮▮▮▮  Sex: F
Acct #: 20091189115
Adm: 11/10/2021, D/C: 11/10/2021

**11/10/2021 - ED in HUMC Emergency Trauma Center (continued)**

## Lab Orders & Results (continued)

### Components

| Component | Value | Reference Range | Flag | Lab |
|-----------|-------|-----------------|------|-----|
| Troponin | <0.01 | 0.00 - 0.02 ng/mL | — | HUMCLab |

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|--------------------|------|----------|---------|------------------|
| 8 - HUMCLab | HUMC HOSPITAL LAB | Patrice Hassoun, MD | 30 Prospect Ave HACKENSACK NJ 07601 | 11/10/20 1257 - Present |

## Imaging Orders & Results

### Imaging

#### XR CHEST PA AND LATERAL [448454709] (Final result)

Electronically signed by: **Edward Yamin, MD on 11/10/21 1733**                                    Status: **Completed**
This order may be acted on in another encounter.
Ordering user: Edward Yamin, MD 11/10/21 1733                     Ordering provider: Edward Yamin, MD
Authorized by: Edward Yamin, MD                                   Ordering mode: Standard
Frequency: STAT Once 11/10/21 1733 - 1 occurrence                Class: Hospital Performed
Quantity: 1                                                      Lab status: Final result
Instance released by: Edward Yamin, MD (auto-released) 11/10/2021 17:33

##### Questionnaire

| Question | Answer |
|----------|--------|
| Reason for exam: | cp |
| Release to patient | Standard release |

##### Begin Exam Questions

| | Answer | Comment |
|--|--------|---------|
| By acknowledging the Exam Statement Below you have: Identified the correct patient, the correct imaging site and ensured the patient is positioned correctly to ensure the lowest possible radiation dose. | Yes | |
| Is the patient pregnant? | No | |
| Does the patient have a completed pregnancy waiver? | | |

#### XR CHEST PA AND LATERAL [448454709]                          Resulted: 11/10/21 1809, Result status: Final result

Ordering provider: Edward Yamin, MD 11/10/21 1733               Order status: Completed
Resulted by: Rita S Patel, MD                                  Filed by: Edi, Rad In 11/10/21 1814
Performed: 11/10/21 1759 - 11/10/21 1759                        Accession number: 33323896
Resulting lab: HMH IMAGING
Narrative:

TECHNIQUE: Chest radiographs, PA and lateral views.

COMPARISON: Chest pain. No previous.

FINDINGS:

LUNGS: Well-aerated lungs. No pleural effusions. No infiltrates or edema.

MEDIASTINUM: Normal heart size.

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▮▮▮▮▮▮ Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

## 11/10/2021 - ED in HUMC Emergency Trauma Center (continued)

### Imaging Orders & Results (continued)

BONES/SOFT TISSUES: Unremarkable.

_____

#### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 13 - Unknown | HMH IMAGING | Unknown | Unknown | 06/17/21 1004 - Present |

### XR CHEST PA AND LATERAL [448454709]                    Resulted: 11/10/21 1759, Result status: In process

Ordering provider: Edward Yamin, MD 11/10/21 1733
Resulted by: Rita S Patel, MD
Performed: 11/10/21 1759 - 11/10/21 1759
Resulting lab: RAD HUMC

Order status: Completed
Filed by: Maximiliano Perez 11/10/21 1759
Accession number: 33323896

## Procedure Orders & Results

### EKG ADULT [448454701] (Final result)

Electronically signed by: Edward Yamin, MD on 11/11/21 0924                    Status: Completed
Mode: Ordering in Individual Order Protocol mode
Ordering user: Oleg Shames, RN 11/10/21 1636
Authorized by: Edward Yamin, MD
Frequency: STAT 1 Time 11/10/21 1637 - 1 occurrence
Quantity: 1
Indications of use: Chest Pain

Communicated by: Oleg Shames, RN
Ordering provider: Edward Yamin, MD
Ordering mode: Individual Order Protocol
Class: Hospital Performed
Lab status: Final result
Instance released by: Oleg Shames, RN (auto-released)
11/10/2021 16:36

#### Questionnaire

| Question | Answer |
|---|---|
| Reason for Exam | Chest Pain |
| Release to patient | Standard release |
| Time EKG Completed | 16:48 |
| Date EKG Completed | 11/10/2021 |

#### Specimen Information

| ID | Type | Source | Collected By |
|---|---|---|---|
| MUSE1904147 | — | — | 11/10/21 1648 |

### EKG - Electrocardiogram (ADULT) [448454701]                    Resulted: 11/11/21 1255, Result status: Final result

Ordering provider: Edward Yamin, MD 11/10/21 1636
Resulted by: Stephen J Angeli, MD
Collected by: 11/10/21 1648
Lab Technician: AG1295
Narrative:
Sinus rhythm
Normal ECG

Order status: Completed
Filed by: Edi, Rad In 11/11/21 1255
Resulting lab: HMH GE MUSE

Confirmed by Angeli MD, Stephen (4002) on 11/11/2021 12:55:03 PM

#### Components

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| Ventricular Rate | 90 | BPM | — | 337 |
| Atrial Rate | 90 | BPM | — | 337 |

Hackensack University Medical Center
30 Prospect Ave
Hackensack NJ 07601-1912

Lee, Patricia
MRN: 105334483, DOB: ▉▉▉▉, Sex: F
Acct #: 2009189115
Adm: 11/10/2021, D/C: 11/10/2021

**11/10/2021 - ED in HUMC Emergency Trauma Center (continued)**

**Procedure Orders & Results (continued)**

| | | | | |
|---|---|---|---|---|
| P-R Interval | 157 | ms | --- | 337 |
| QRS Duration | 72 | ms | --- | 337 |
| Q-T Interval | 391 | ms | --- | 337 |
| QTC Calculation (Bazett) | 479 | ms | --- | 337 |
| P Axis | 41 | degrees | --- | 337 |
| R Axis | -12 | degrees | --- | 337 |
| T Axis | 38 | degrees | --- | 337 |

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 337 - Unknown | HMH GE MUSE | Unknown | Unknown | 03/14/19 0703 - Present |

**Signed**

Electronically signed by Stephen J Angeli, MD on 11/11/21 at 1255 EST

# Exhibit D

Prepared by the Court:

_____

ALAN CHAN,                          :

                                    :

            Plaintiff,              :

                                    :

v.                                  :

                                    :

PATRICIA J. LEE,                    :

                                    :

            Defendant.             :

_____:

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
FAMILY PART
COUNTY OF BERGEN

Docket No.    FM-02-754-21

CIVIL ACTION

ORDER

**F I L E D**

NOV 12 2021

JANE GALLINA-MECCA, J.S.C.

   **THIS MATTER** being opened by the Court, on an emergent application on behalf of the Guardian Ad Litem, Evelyn Nissirios, Esq.; upon notice to Plaintiff, Alan Chan, whose appearance is waived, represented by Michelle Hart, Esq.; and Defendant, Patricia J. Lee, not appearing, represented by Loren M. La Forge, Esq.; and for the reasons stated on the record; and for good cause shown;

   **IT IS ON THIS 12th day of November, 2021:**

   **ORDERED:**  Defendant shall immediately return to the children to Plaintiff who shall have sole legal and residential custody of the children until further order of the Court; and it is further

   **ORDERED**:  Defendant's parenting time shall be suspended until further order of the Court; and it is further

   **ODERED**:   This Order may be shared with law and enforcement, the Division of Children Protection of Permanency, the children's school, all moderators of extracurricular activities in which the children are involved and all service providers of the family.

   A copy of this Order has been provided to counsel for the parties by the Court.

                                   _____
                                   HON. JANE GALLINA-MECCA, J.S.C

# Exhibit E

**Prepared by the Court:**

|  |  |
|---|---|
| ALAN CHAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PATRICIA J. LEE, | : |
| | : |
| Defendant. | : |

**SUPERIOR COURT OF NEW JERSEY**
**CHANCERY DIVISION**
**FAMILY PART**
**COUNTY OF BERGEN**

**Docket No.    FM-02-754-21**

**CIVIL ACTION**

**ORDER**

**F I L E D**

APR 22 2022

JANE GALLINA-MECCA, J.S.C.

     **THIS MATTER** having come before the Court upon Notice of Motion of Defendant, Patricia J. Lee, filed as a self-represented litigant; upon notice to Plaintiff, Alan Chan, represented by Michele Hart, Esq., Defendant's Guardian *ad litem*, Linda A. Schofel, Esq. and the parties' minor children's Guardian *ad litem*, Evelyn Nissirios, Esq.; and the Court having reviewed the papers submitted; and after hearing arguments of the parties; and for the reasons stated on the record; and for good cause having been shown;

     **IT IS on this 22nd day of April, 2022;**

     **ORDERED:**  Defendant's request to obtain access to Court transcripts from ten (10) different proceedings ranging between August 13, 2021, to February 24, 2022, is **DENIED**; and it is further

     **ORDERED:**  Defendant's request that her sister, Bandy X. Lee, serve as a Court Appointed Special Advocate is **DENIED**.

     A copy of this Order has been provided by the Court to all parties.

_____
**HON. JANE GALLINA-MECCA, J.S.C.**

[ ] unopposed
[x] opposed

Page **1** of **1**

# Exhibit F



**New Jersey Judiciary**

## Court Review of Request for
## Confidential Court Transcripts, Audio, or Video Files
(Division of Child Protection and Permanency,
In-Camera Child(ren) Interview, Juvenile and Sealed Hearings)

| NOTE:  Original Written Request Must Be Attached to this Form |
| --- |

| TO JUDGE:<br><br>HON. JANE GALLINA-MECCA , PJFP | DATE<br><br>6/26/2025 |
| --- | --- |

The Tapes and Transcripts Unit has received a written request to transcribe and / or obtain copies of audio or video files for the matter listed below:

**(Transcript Unit Staff Member to complete lines A through H)**

A. CASE NAME  CHAN, ALAN vs LEE, PATRICIA

B. DATE OF PROCEEDING(S) 6/6/2025 (SEALED HEARING)

C. DOCKET NUMBER  FM-02-754-21

D. JUDGE ASSIGNED  MECCA

E. REQUESTING PARTY  PATRICIA LEE

F. REQUESTING PARTY'S RELATIONSHIP TO CASE  DEFENDANT

G. ATTORNEY (if any)

H. STAFF MEMBER COMPLETING FORM   COURT TRANSCRIPTION SERVICES FAX: 201-221-0552      N.S.

The undersigned judge has reviewed the attached written request and directs the transcript office to proceed as follows:

☐ Authorize
    (To be released to: _____ )

☐ A protective order is attached and must be provided to the requestor.

☒ Do Not Authorize  (Reason: See attached addendum. _____ )

☐ Notify Requestor that a motion must be filed

_____      6/26/2025
JUDICIAL SIGNATURE                                      DATE

Hon. Jane Gallina-Mecca, P.J.F.P.
PRINT NAME

Completed and signed form and original letter to be returned to the Tapes and Transcript Unit

Revised Form Promulgated by Administrative Director Memo 12/18/2012, CN: 11078



New Jersey Judiciary
## Request for Audio Records of Proceedings
**DISCLAIMER: Recordings may NOT be used to produce official transcripts.
They are for reference only.**

1. Fill out all the information on this form. Incomplete or inaccurate case information may delay your request. For help with case information, please contact the court office. Once completed, email the form to the local transcript office.

2. Select the type of recording.
   - ■ **Audio file – no CD.** You will receive an email with a password to listen to an audio recording of the court event. No charge.
   - ☐ **Audio file on CD.** There is a $10.00 fee for audio files on CD. Contact the county transcript office at the email below if you wish to request and pay for an audio CD.

### ▮ Requesting Party

| Name | Date |
|---|---|
| Patricia Lee | 04/02/2025 |

| Address: Street |
|---|
| 10 North Hillside Place |

| City | State | Zip Code |
|---|---|---|
| Ridgewood | NJ | 07450 |

| Email Address | Telephone Number |
|---|---|
| jandy007@gmail.com | (917) 449-6555 |

Requestor's Connection to the Case
☐ Plaintiff        ■ Defendant        ☐ Plaintiff's Attorney    ☐ Defendant's Attorney

☐ Victim        ☐ Other _____

### ▮ Case Information

| Case Name (Plaintiff v. Defendant) | Trial Court Docket Number / Indictment Number |
|---|---|
| Alan T. Chan v. Patricia Lee | FM-02-754-21 |

| Date(s) of Proceeding | Type of Proceeding (e.g. trial, sentencing, motion, etc.) | Name of Judge |
|---|---|---|
| 6/6/2025 | Motion | Jane Gallina-Mecca |
| | | |
| | | |
| | | |
| | | |
| | | |

| Any special instructions |
|---|
| Requested as part of ADA accommodation |

Revised 11/17/2021, CN 12605

**Transcript Office**

Select County:    - Select County -
Transcript Office Email:

### For Court Staff Use Only

Processed By: _____    Date: _____

Notes: _____

## ADDENDUM

This is a closed confidential proceeding, and Defendant has repeatedly violated Court orders by releasing information to third parties in blatant disregard of the privacy right of the children.



**New Jersey Courts**
www.njcourts.com

Independence · Integrity
Fairness · Quality Service

**New Jersey Judiciary**
## Court Review of Request for
## Confidential Court Transcripts, Audio, or Video Files
(Division of Child Protection and Permanency,
In-Camera Child(ren) Interview, Juvenile and Sealed Hearings)

**NOTE:  Original Written Request Must Be Attached to this Form**

| TO JUDGE: <br><br> HON. JANE GALLINA-MECCA , PJFP | DATE <br><br> 6/26/2025 |
|---|---|

The Tapes and Transcripts Unit has received a written request to transcribe and / or obtain copies of audio or video files for the matter listed below:

**(Transcript Unit Staff Member to complete lines A through H)**

A.  CASE NAME  CHAN, ALAN vs LEE, PATRICIA

B.  DATE OF PROCEEDING(S)  2/10, 4/10/2025 (SEALED HEARING)

C.  DOCKET NUMBER  FM-02-754-21

D.  JUDGE ASSIGNED  MECCA

E.  REQUESTING PARTY  PATRICIA LEE

F.  REQUESTING PARTY'S RELATIONSHIP TO CASE  DEFENDANT

G.  ATTORNEY (if any)

H.  STAFF MEMBER COMPLETING FORM   COURT TRANSCRIPTION SERVICES FAX: 201-221-0552          N.S.

The undersigned judge has reviewed the attached written request and directs the transcript office to proceed as follows:

☐    Authorize
       (To be released to: _____ )

☐    A protective order is attached and must be provided to the requestor.

☒    Do Not Authorize  (Reason: See attached addendum. _____ )

☐    Notify Requestor that a motion must be filed

_____          6/26/2025
JUDICIAL SIGNATURE                                DATE

Hon. Jane Gallina-Mecca, P.J.F.P.
PRINT NAME

Completed and signed form and original letter to be returned to the Tapes and Transcript Unit

Revised Form Promulgated by Administrative Director Memo 12/18/2012, CN: 11078



New Jersey Judiciary
## Request for Audio Records of Proceedings
**DISCLAIMER: Recordings may NOT be used to produce official transcripts.
They are for reference only.**

1. Fill out all the information on this form. Incomplete or inaccurate case information may delay your request. For help with case information, please contact the court office. Once completed, email the form to the local transcript office.

2. Select the type of recording.
   - ■ **Audio file – no CD.** You will receive an email with a password to listen to an audio recording of the court event. No charge.

   - ☐ **Audio file on CD.** There is a $10.00 fee for audio files on CD. Contact the county transcript office at the email below if you wish to request and pay for an audio CD.

### ■ Requesting Party

| Name<br>Patricia Lee | Date<br>06/26/2025 |
|---|---|

| Address: Street<br>10 North Hillside Place | | |
|---|---|---|

| City<br>Ridgewood | State<br>NJ | Zip Code<br>07450 |
|---|---|---|

| Email Address<br>jandy007@gmail.com | Telephone Number<br>(917) 449-6555 |
|---|---|

Requestor's Connection to the Case

■ Plaintiff    ☐ Defendant    ☐ Plaintiff's Attorney    ☐ Defendant's Attorney

☐ Victim    ☐ Other _____

### ■ Case Information

| Case Name (Plaintiff v. Defendant)<br>Lee v. Chan | Trial Court Docket Number /<br>Indictment Number<br>FV-02-1716-25 |
|---|---|

| Date(s) of Proceeding | Type of Proceeding<br>(e.g. trial, sentencing, motion, etc.) | Name of Judge |
|---|---|---|
| 02/10/2025 | "Warning" meeting | Jane Gallina-Mecca |
| 04/02/2025 | Motion | Jane Gallina-Mecca |
| 04/10/2025 | Motion | Jane Gallina-Mecca |
| | | |
| | | |
| | | |

Any special instructions
I am a victim of both defendant and the judge, under ADA protection. Nothing should be sealed

| **Transcript Office** |
|---|
| Select County:    - Select County - |
| Transcript Office Email: |

| **For Court Staff Use Only** |
|---|
| Processed By: _____ Date: _____ |
| Notes: _____ |

Revised 11/17/2021, CN 12605

# Exhibit G

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION- FAMILY PART
BERGEN COUNTY
DOCKET NO.: **FM-02-754 -21**

**FILED**
AUG 31 2022
*JANE GALLINA-MECCA, J.S.C.*

**_ALAN CHAN_**
_____
Plaintiff

vs.

**_PATRICIA LEE_**
_____
Defendant

CIVIL ACTION
CASE MANAGEMENT ORDER
Pursuant to Rule 5:5-6
All prior orders shall remain in effect
except as supplemented or amended by
this Order

This matter being opened to the Court on    **_Wednesday,_**
**_August 31, 2022_**

☒  **(a)**    **during a case management conference before Jane Gallina-Mecca, J.S.C.**
☐  (b)    during a telephonic conference with: _____
☐  (c)    by consent of both attorneys

Plaintiff being represented by    **_Michele R Hart, Esq_** _____ ,
_____ and the Defendant being represented
by  **_Pro Se_** _____    _____
and Evelyn Nissirios, Guardian _ad litem_ for the children, Linda A Schofel, Guardian _ad
litem_ for the defendant appearing good cause existing for the entry of this Order

**IT IS HEREBY ORDERED** that the above titled matter is assigned to the
following track. **(If custody is in issue the case shall be placed on the Priority Track.)**

A. EXPEDITED TRACK    ☐    (Discovery shall not exceed 90 days)
(If "A" checked go directly to Page 3)
B. STANDARD TRACK    ☒    (Discovery shall not exceed 120 days)

C. PRIORITY TRACK    ☐    (Discovery to be set at first CMC)

D. COMPLEX TRACK    ☐    (Discovery to be set at first CMC)

**IT FURTHER APPEARING** that on the issue of **Custody and Parenting Time:**
- ☐ There is/are no child(ren); or ☐ the child(ren) is/are emancipated and/or over the age of 18 years.
- ☐ DV Order is in effect.
- ☒ Custody is an issue.
- ☐ All issues relating to Custody and Parenting Time have been resolved pursuant to the Custody/Parenting Time stipulation attached thereto.
- ☒ The matter is referred to Custody/Parenting Time mediation.
- ☐ The Custody/Parenting Time Plan, required pursuant to <u>R</u>. 5:8-5 is attached hereto/or will be submitted by ___Click or tap to enter a date.___

          **IT FURTHER APPEARING** that the following issues are in dispute:

| | | |
|---|---|---|
| ☒ Child Support | ☒ Counsel Fees | ☒ Cause of Action |
| ☒ Alimony | ☒ Medical Insurance | ☐ Other Issues |
| ☒ Equitable Distribution | ☒ Life Insurance | _____ |

          **IT IS FURTHER ORDERED** that the following be furnished no later than the dates indicated:
- ☒ Case Information Statement filed? Plaintiff (Yes ☒ No ☐); Defendant (Yes ☒ No ☐) CIS to be filed by Plaintiff ☐; Defendant ☐; Both ☐ by
- ☒ Plaintiff/Defendant/Both shall propound Interrogatories/Notices to Produce by: Click or tap to enter a date.
- ☒ Plaintiff/Defendant/Both shall answer Interrogatories and comply with Notices to Produce by:Click or tap to enter a date.
- ☒ Plaintiff/Defendant/Both shall complete Depositions by: Reserved Click or tap to enter a date.
- ☐ Plaintiff/Defendant/Both shall produce proof of bank account balances, pension, or other records, such as _____ by: Click or tap to enter a date.
- ☐

| | Date (00/00/00) | Joint or Court Appointed Expert | Plaintiff Expert | Defendant Expert | Cost paid by (P/D) |
|---|---|---|---|---|---|
| Real Estate appraisals to be completed by | 11/29/21 | ☐ | ☐ | ☐ | ____ |
| Personalty appraisals to be completed by | ____ | ☐ | ☐ | ☐ | ____ |
| Business appraisals to be completed by | ____ | ☐ | ☐ | ☐ | ____ |
| Pension appraisals to be completed by | ____ | ☐ | ☐ | ☐ | ____ |

Other (Expert Report or related issues):
1. **Plaintiff reserves the right to engage an employability expert.**

**IT IS HEREBY ORDERED** that this matter shall be scheduled before the Bergen County Early Settlement Panel #39    Click or tap to    ,    at    *n/a*
on _____    enter a date. _____    _____

**IT IS FURTHER ORDERED** that a Case Management Conference has been scheduled on    *10/28/2022*    at    *11:00 AM*

---

**IT IS FURTHER ORDERED**
**Defendant's pleadings are dismissed for the reasons placed on the record. Ms Schofel is dismissed. This matter shall proceed as a default.**

**All prior orders not inconsistent with this order remain in full force and effect.**

☐ **If the parties do not submit a Consent Order as to Custody and Parenting time before** Click or tap to enter a date., **then all parties and counsel are ordered to appear on** Click or tap to enter a date.

**at** ☐**8:30am/** ☐**1:30pm . If the parties submit a Consent Order by** Click or tap to enter a date., **then appearances for the** Click or tap to enter a date. **CMC are waived.**

---

Trial Date: _____    ☐    Trial Date to be Determined

_____
Hon.  JANE GALLINA-MECCA J.S.C

# Exhibit H



**New Jersey Courts**
Independence • Integrity • Fairness • Quality Service

Bergen Vicinage

## CAROL V. NOVEY CATUOGNO, A.J.S.C.
### Assignment Judge

10 Main Street, Room 425, Hackensack, New Jersey 07601-7699 • www.njcourts.gov • 201-221-0700 ext. 25271 • Fax: 201-221-0601

June 17, 2025

Patricia J. Lee
10 North Hillside Place
Ridgewood, NJ 07450
via email jandy007@gmail.com

Dear Ms. Lee,

I am in receipt of your appeal seeking review of the denial of certain accommodations you've requested pursuant to the ADA. An ADA appeal concerns the denial of an ADA accommodation to allow participation in a court proceeding. In this instance, your next court proceeding is scheduled for June 18, 2025.

In your appeal, you request permission to appear via Zoom for your upcoming court appearance. In his writing dated June 6, 2025, Title II ADA Coordinator Arthur Andreano indicated that you are permitted to appear virtually via Zoom and noted that the Zoom platform contains a captioning service which you may utilize.

Next you request that your sister and physician, Bandy Lee, be present with you during court proceedings, be allowed to interpret for you, as well as speak for you, during the proceedings. These requests cannot be accommodated. As Mr. Andreano informed, Bandy Lee is not an attorney and is, therefore, unable to speak for you in court. Moreover, a surrogate may not provide testimony or "speak" for another during a court appearance. Lastly, there is nothing to support the assertion that you require an interpreter. Were an interpreter required, the court would provide same to perform any translation.

Regarding your request to have Bandy Lee present with you, same may not be accommodated as the rules of court do not allow, for example, a potential witness to be present for testimony offered by other witnesses, unless they are also a party to the action. There may be additional reasons for disallowing a third party from being present in the room with a court user, specifically during their testimony.






Your concern about Dr. Lee's presence "to attend to your medical needs, if any" may be mitigated by having her, or another medical professional, outside of the room so that you may indicate if you need immediate assistance.

You seek to have Mr. Jay Shore, your ADA Advocate, appear at the hearing also via Zoom and indicate that this is necessary so that he may aid and encourage you in the exercise of your rights. Please know that the State of New Jersey, like federal authorities, does not recognize a legal designation of "ADA advocate." Accordingly, Mr. Shore is unable to participate in your proceeding.

You ask for others, specifically Mr. Shore and Dr. Lee, be permitted to request breaks on your behalf and at their discretion. As Mr. Andreano informed, the judge will allow for reasonable breaks throughout the course of the proceeding.

You seek to audio and/or video the proceedings. Recording any court proceeding is not permitted without permission. As the purpose of the recording is to assist in mitigation of a communication disability, such accommodation is unnecessary. An audio recording of the proceeding may be requested at the conclusion of the court event.

Lastly, you seek removal of the judge presiding over your matter and the appointment of a "trauma-informed judge." This is not an appropriate request for accommodation under the ADA. A motion to recuse a judge is filed with the judge whose recusal you seek.

Very truly yours,

*Carol V. Novey Catuogno, A.J.S.C*
Hon. Carol V. Novey Catuogno, A.J.S.C.

C: Arthur Andreano






# Exhibit I

(Sent 3 minutes before the 9:00 AM hearing)

## RE: RE: RE: [External] ADA Invocation for Docket 02-754-21

Inbox

**A**

**Arthur Andreano**                                         Fri, Jun 6, 8:57 AM
to me

Ms. Lee,

1. The judge will speak slowly and you can ask for clarification, as needed.
2. The judge will oversee the matter and treat all parties with respect at all times.
3. The judge will allow the parties to take reasonable breaks throughout the course of the proceedings.
4. You will be permitted to appear virtually via Zoom and there is a captioning service built into Zoom that you can utilize.
5. Ms. Bandy Lee is not an attorney and will not be permitted to speak on your behalf in court proceedings. Nor will Mr. Shore be permitted to speak on your behalf as he is not an attorney licensed to practice law in the state of New Jersey.
6. The court proceedings are recorded by audio, not video. A copy of the audio recording can be requested.
7. No one is permitted to record court proceedings absent approval by the Assignment Judge for the Bergen Vicinage. That form is attached.
8. Judge Gallina-Mecca is the assigned judge for this matter. As you are aware, should you wish Judge Gallina-Mecca to recuse herself, you must file a motion to her seeking her recusal.


Thank you,

Arthur Andreano
Operations Manager/Title II ADA Coordinator
Bergen Vicinage

**From:** jandy007@gmail.com <jandy007@gmail.com>
**Sent:** Thursday, June 5, 2025 2:16 PM
**To:** Arthur Andreano <Arthur.Andreano@njcourts.gov>
**Cc:** Rights ADA <adarights@protonmail.com>; bandyleemd@gmail.com
**Subject:** Re: RE: RE: [External] ADA Invocation for Docket 02-754-21


Mr. Andreano,

I am following up on the below. I urgently need accommodation if I am to attend my hearings tomorrow.

A lack of ADA accommodation is what led to permanent injuries and my need for 24-hour care. I would really like to see this situation remedied, so that the court can no longer cause me any more disabilities, or weaponize my disabilities against me.

Thank you very much,

Patricia

On Tue, Jun 3, 2025 at 4:01 PM jandy lee <jandy007@gmail.com> wrote:

Mr. Andreano,

I would like to know your qualifications as well, please, and under whose authority you operate. If you are an agent of my opposition (Judge Gallina-Mecca, as defendant in my federal case), I need to know.

I repeat these Reasonable Accommodation Requests in my own voice (the ==highlighted parts== are especially important):
1. That the Court speak slowly and with clarity, and allow Ms. Lee to ask for and receive clarity and meaning for any terms or words that are confusing or unclear to her, and for the judge to make often inquiry to Ms. Lee, ensuring that she has effective communication from the services, programs, and activities of the Court.
2. That the Court avoid coercion, intimidation, threats, and interference for Ms. Lee, Dr. Lee, and I, during the exercise and enjoyment of our ADA rights, which is henceforth perpetual. (42 U.S.C. §12203(b))
3. That Ms. Lee be allowed to take breaks as needed, and when needed.
4. That Ms. Lee and I (both with communication disabilities) have CART services to mitigate communication disability. CART is listed in 28 C.F.R. 35.104(1) as a reasonable and available auxiliary aid for Title II covered entities.
5. ==That Ms. Lee appear remotely for all proceedings, by Zoom or other similar video-based telecommunication products and systems== (28 C.F.R. §35.104(1)). There is copious documentation by medical professionals that assert that attending court in person is life-threatening to Ms. Lee. ==[This is especially critical for my TRO case, in which I will be facing not one but two of my assailants.]==
6. ==That Ms. Lee have Dr. Lee, with her during court proceedings to keep Ms. Lee centered, and with as much executive function as possible (aid and encourage).== (42 U.S.C. §12203(b))
7. ==That Ms. Lee have me as her Certified ADA Advocate, attending any and all proceedings by Zoom or other similar video-based telecommunication products and systems== (28 C.F.R. §35.104(1)), to aid and encourage Ms. Lee in the exercise and enjoyment of her rights. (42 U.S.C. §12203(b)). (My physical disability also precludes me from travel to the Court currently.)

8. That Dr. Lee, as the holder of a valid Power of Attorney, be allowed to interpret for Ms. Lee, and speak for Ms. Lee in Court proceedings, in communication-related activities (not representing her as would an attorney).

9. That Ms. Lee be allowed to have either of her ADA Advocates to request a break for Ms. Lee's benefit. When someone is triggered, they are often unable to request help, and as a certified, trained advocate, I can see this situation more clearly than a disabled litigant who is in symptomatic response. Dr. Lee, as a psychiatrist, can also see these triggers and act accordingly to protect Ms. Lee's rights to be accommodated. [This could be life-saving.]

10. That the proceedings be recorded, both video and audio, by the court and for the Court to provide a copy of the audio and video recording to Ms. Lee at no cost.

11. That Ms. Lee and I both record both audio and video of the proceedings, for the mitigation of communication disability, so that we can have this immediately available to us to review after the Court hearing to aid in memory recall, adjustment of ADA accommodation needs, and other communication disability related ameliorative benefits, and to ensure that the Court's official recording is not edited in any way, which is an actual fear and apprehension that Ms. Lee has. [The brain injury that I have directly affects my recall, and has been medically-documented to be court-caused.]

The widely accepted study by Albert Mehrabian, PhD, established the 7-38-55 Rule: This is the most famous outcome from Mehrabian's research, often summarized as:
• 7% of the message is conveyed through words (verbal content).
• 38% comes from vocal elements like tone, pitch, and voice quality (paralanguage).
• 55% is derived from non-verbal cues such as facial expressions, body language, and posture.

This individual audio and video recording by Ms. Lee and I is to gain "effective communication" (ADA Title II Assistance Manual, II-7.1000) (Audio or transcript only will NOT accommodate Ms. Lee for these matters.)

12. That you include me (adarights@pm.me) on any and all communications between the Court or the administrative officers or employees of the Court and Ms. Lee, which concerns ADA access.

13. That Ms. Lee be appointed a trauma-informed judge, who can uphold the integrity and impartiality of the judiciary as it relates to ADA access and basic empathy towards disabled litigants. [If Judge Gallina-Mecca cannot be replaced, then I ask that another, trauma-informed judge sit in my case, since Mecca is not only non-trauma-informed but trauma-denying. Thanks.]

Patricia

## RE: RE: [External] ADA Invocation for Docket 02-754-21

Inbox



**Arthur Andreano**                                                      Tue, Jun 3, 2:36 PM
to me, Rights, bandyleemd@gmail.com

Good afternoon,

Only licensed attorneys may advocate on behalf of others in the State of New Jersey.


Thank you,

Arthur Andreano
Operations Manager/Title II ADA Coordinator
Bergen Vicinage

**From:** jandy007@gmail.com <jandy007@gmail.com>
**Sent:** Tuesday, June 3, 2025 9:23 AM
**To:** Arthur Andreano <Arthur.Andreano@njcourts.gov>; Rights ADA <adarights@protonmail.com>
**Cc:** bandyleemd@gmail.com
**Subject:** Re: RE: [External] ADA Invocation for Docket 02-754-21


Dear Mr. Andreano,

I give you permission to interact with Mr. Shore on my behalf, as long as the court is
endangering my life. I am too disabled to do this myself, and so it is either Mr. Shore or
Dr. Bandy Lee who will be speaking for me. As you previously recommended,
legal processes have been initiated against the judge, but this will not help for my Friday
hearing.

Thanks,

Patricia J. Lee