<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PATRICIA J. LEE,<br><br>　　　　　*Plaintiff*,<br><br>v.<br><br>HON. CAROL V. NOVEY CATUOGNO, HON. JANE GALLINA-MECCA, EVELYN NISSIRIOS, ARTHUR ANDREANO, ALAN T. CHAN, STATE OF NEW JERSEY,<br><br>　　　　　*Defendants*. | Civil Action No. 25-13291<br><br>**OPINION**<br><br>April 30, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Alan T. Chan's ("Chan") Motion to Dismiss (ECF 18, "Chan's Motion to Dismiss" or "Chan MTD"); Defendants Judge Carol V. Novey Catuogno, Judge Jane Gallina-Mecca, ADA Coordinator Arthur Andreano, and the State of New Jersey's (collectively, "Judiciary Defendants") Motion to Dismiss (ECF 40, "Judiciary Defendants' Motion to Dismiss" or "Judiciary MTD"); and Defendant Evelyn Nissirios's ("Nissirios") Motion to Dismiss (ECF 42, "Nissirios's Motion to Dismiss" or "Nissirios MTD") *pro se* Plaintiff Patricia Lee's ("Plaintiff") Amended Complaint. (ECF 26, "Amended Complaint" or "Am. Compl.")  Plaintiff opposed the Judiciary Defendants' Motion (ECF 41, "Opposition to Judiciary MTD" nor "Opp. to Judiciary"), and the Judiciary Defendants replied (ECF 45, "Judiciary Reply").  Plaintiff did not file timely oppositions to Chan's or Nissirios's Motions to Dismiss.  The Court has decided the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Chan's Motion is

1

**GRANTED**, the Judiciary Defendants' Motion is **GRANTED**, and Nissirios' Motion is **GRANTED**.

  I.  <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>[1]

  a. **The Parties**

  Plaintiff Patricia Lee ("Plaintiff") is a resident of Bergen County, New Jersey, proceeding *pro se.* (ECF 26, "Am. Compl." ¶ 5.) Plaintiff alleges that she suffers from several medical conditions, including stress-induced malignant hypertension, cognitive impairment, complex post-traumatic stress disorder ("C-PTSD"), catatonia, and limited mobility due to stress-induced muscle contractions. (*Id.*) She alleges that these conditions substantially limit major life activities, including understanding, communicating, and ambulating, but that she is "fully capable of participating in legal proceedings" with "appropriate accommodations." (*Id.*; ECF 3 at 15.) Defendant State of New Jersey is sued as a "public entity" subject to Title II of the ADA through its Judicial Branch. (Am. Compl. ¶ 5.) Defendant Hon. Jane Gallina-Mecca ("Judge Gallina-Mecca") is a Judge of the Superior Court of Bergen County, Family Part, who presided over the family court proceedings at issue. (*Id.*) She is sued in her official capacity. (*Id.*) Defendant Hon. Carol V. Novey Catuogno ("Judge Novey Catuogno") is the Assignment Judge of Bergen County. (*Id.*) She is also sued in her official capacity. (*Id.*) Defendant Arthur Andreano ("Andreano") is the ADA Coordinator for the New Jersey courts. (*Id.*) Defendant Evelyn Nissirios ("Nissirios") was appointed by Judge Gallina-Mecca as the guardian ad litem ("GAL") for the parties' minor

---

[1] The facts are drawn from the Amended Complaint (ECF 26). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court construes Plaintiff's *pro se* filings liberally. *See Marcinek v. Comm'r*, 467 Fed. Appx. 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant").

children.  (*Id.* ¶¶ 5, 7.)  Defendant Alan T. Chan ("Chan") is Plaintiff's former husband and the opposing party in the underlying state court proceedings.  (*Id.* ¶ 5.)  Chan is a private individual whom Plaintiff alleges "acted 'under color of law' in concert with state officers to violate her rights."  (*Id.*)  Judge Novey Catuogno, Judge Gallina-Mecca, Andreano, and the State of New Jersey are referred to collectively as the "State Defendants."

### b.  The State Court Action

Plaintiff was a litigant in a contested family court proceeding in Bergen County Superior Court captioned *Chan v. Lee*, Docket No. FM-02-754-21 (the "State Court Action").  (Am. Compl. ¶ 7.)  The State Court Action was initiated in or around 2020 and involved Plaintiff's divorce from Chan, including disputes over child custody and the division of marital property.  (*Id.*)  Judge Gallina-Mecca presided over substantial portions of the case, and Nissirios was appointed as GAL for the minor children.  (*Id.*)  A related domestic violence proceeding, *Lee v. Chan*, Docket No. FV-02-1716-25, was later initiated and assigned to Judge Novey Catuogno.  (*Id.* ¶¶ 5, 7.)

In November 2021, Judge Gallina-Mecca entered an order transferring sole custody of the children to Chan and suspending Plaintiff's parenting time.  (*Id.* ¶¶ 7, 9.)  In December 2024, Judge Gallina-Mecca issued a judgment in the divorce proceeding resolving marital property issues.  (*Id.* ¶ 14.)  As part of that judgment, the court awarded exclusive possession and disposal of the marital home to Chan and subsequently issued a writ of possession. (*Id.*)

### c.  Plaintiff's Alleged Disabilities and Accommodation Requests

Plaintiff alleges that she repeatedly notified the state court of her disabilities and requested accommodations throughout the State Court Action. (Am. Compl. ¶ 9.) Her alleged accommodation requests included the following:

In November 2021, Plaintiff experienced a medical emergency and requested an adjournment of a scheduled hearing. (*Id.*) Plaintiff alleges that Judge Gallina-Mecca denied the adjournment request, held her in contempt for not appearing, and authorized the seizure of her children without notice or a prior evidentiary hearing. (*Id.*) Plaintiff alleges that Nissirios filed an "emergent application" that resulted in the permanent suspension of Plaintiff's parenting time. (*Id.*)

After proceedings allegedly held in her absence, Plaintiff requested transcripts or audio recordings as a form of accommodation. (*Id.*) Plaintiff alleges that Judge Gallina-Mecca refused to provide transcripts, citing a sealing order, and issued instructions to court staff to prevent Plaintiff from obtaining transcripts or other case documents. (*Id.*)

Plaintiff allegedly sought leave to appear remotely via videoconference, supported by medical documentation indicating that in-person attendance at the courthouse posed risks to her health. (*Id.*) Plaintiff alleges the court initially refused this request despite physicians' warnings, though it later granted remote attendance. (*Id.*) However, Plaintiff alleges that the remote-attendance accommodation was revoked before her divorce trial in May 2024, resulting in her exclusion from three days of trial. (*Id.*)

Following an ICU admission in December 2024, Plaintiff requested CART captioning or other real-time assistive devices. (*Id.*) Plaintiff alleges that Judge Novey Catuogno denied the request on the premise that audio recordings were available afterwards—a premise Plaintiff disputes, contending she was never granted access to audio recordings or transcripts. (*Id.*) Plaintiff also alleges that Andreano denied her requests on the ground that she had not provided sufficient medical documentation. (*Id.* ¶ 31.)

### d. Relief Sought

4

The Amended Complaint asserts three counts.  In Count I, Plaintiff alleges that Defendants violated Title II of the ADA, 42 U.S.C. § 12132, by failing to provide reasonable accommodations during the State Court Action, thereby excluding her from meaningful participation in court proceedings.  (Am. Compl. ¶¶ 19–23.)  In Count II, Plaintiff alleges that Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, on substantially the same grounds, alleging that the New Jersey court system receives federal financial assistance.  (*Id.* ¶¶ 24–28.)  In Count III, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment rights to due process, equal protection, and access to the courts against the individual Defendants. (*Id.* ¶¶ 29–37.)  As to Chan, Plaintiff alleges that he "consistently conspired and acted jointly with Judge Gallina-Mecca and Defendant Nissirios to deny Plaintiff of ADA accommodations for the entire five (5)-year duration of his divorce litigation."  (*Id.* ¶ 30.)

Plaintiff seeks injunctive and declaratory relief, including: a stay of the state court eviction order; a declaration that the state court's conduct violated her federal rights; a permanent injunction requiring Defendants to implement ADA accommodations in all future proceedings; and an order vacating state court orders "entered in violation of Plaintiff's federal rights."  (*Id.* ¶¶ 35–39.)

### e.  Prior Federal Litigation

This is not the first time Plaintiff has brought federal claims arising from the State Court Action.  Plaintiff has filed at least four prior actions in this District relating to the same underlying family court proceedings.  (*See* ECF 4 at 6.)

First, on November 23, 2021, Plaintiff filed *Lee v. Gallina-Mecca*, No. 21-20197 (D.N.J.), alleging that Judge Gallina-Mecca violated her rights during the State Court Action.  That case was dismissed on September 19, 2022.  *See Lee v. Gallina-Mecca*, 2022 WL 4354724 (D.N.J.

5

Sept. 19, 2022). The Third Circuit affirmed. *See Lee v. Gallina-Mecca*, 2023 WL 5814783 (3d Cir. Sept. 8, 2023).

Second, on August 21, 2023, Plaintiff filed *Lee v. Gallina-Mecca*, No. 23-06495 (D.N.J.), asserting civil rights claims against Judge Gallina-Mecca, Nissirios, and others arising from the same State Court Action. On February 10, 2025, this Court dismissed that action pursuant to Rules 12(b)(1) and 12(b)(6). *See Lee v. Gallina-Mecca*, 2025 WL 444436 (D.N.J. Feb. 10, 2025) (Semper, J.). In that opinion, the Court held that Judge Gallina-Mecca was entitled to judicial immunity from Plaintiff's Section 1983 claims and that Nissirios was entitled to quasi-judicial immunity. *Id.* Plaintiff also filed *Lee v. Chan*, No. 22-07266, which was addressed by the Third Circuit. *See* 2023 WL 4758453 (3d Cir. July 26, 2023). Finally, Plaintiff filed *Lee v. Gallina-Mecca*, No. 25-02676 (D.N.J. filed Apr. 14, 2025). (*See* ECF 4 at 6.)

### f. Procedural History

On July 16, 2025, Plaintiff filed the original Complaint in this action, along with a motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (ECF 1; ECF 3.) On July 17, 2025, the Court denied the TRO motion, finding that Plaintiff failed to demonstrate a reasonable probability of success on the merits or irreparable harm. (ECF 4.) On July 25, 2025, Plaintiff filed a motion for reconsideration and recusal. (ECF 10.) On July 29, 2025, the Court denied that motion. (ECF 11.)

On August 3 and August 4, 2025, Plaintiff filed Amended Complaints (ECF 15; ECF 16), both of which were restricted by the Clerk's Office due to unredacted personal identifiers in violation of Local Civil Rule 5.2. On October 21, 2025, Plaintiff filed the operative Amended Complaint (ECF 26), which added Chan and the State of New Jersey as defendants and dropped former defendants Sheriff Cureton and Attorney General Platkin.

On August 29, 2025, Chan filed his Motion to Dismiss (ECF 18), arguing that Plaintiff's claims are barred by res judicata, that Chan is not a state actor amenable to suit under Section 1983, and that Plaintiff's conspiracy allegations are conclusory. (ECF 18-1.) Chan filed a reply in support of his Motion to Dismiss on October 14, 2025. (ECF 24.) Plaintiff did not file a timely opposition to Chan's Motion to Dismiss.  On October 20, 2025, Plaintiff filed a motion for leave to file her opposition out of time (ECF 27), which Chan opposed (ECF 29) and Plaintiff replied to (ECF 34).[2]

On November 14, 2025, counsel for the State Defendants entered an appearance.  (ECF 30.)  On January 13, 2026, the State Defendants filed their Motion to Dismiss.  (ECF 40.)  Plaintiff filed her opposition on January 26, 2026.  (ECF 41.)  The State Defendants filed their reply on February 23, 2026. (ECF 45.)

On January 30, 2026, Nissirios filed her Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF 42.)  Plaintiff did not file a timely opposition to Nissirios' Motion to Dismiss. On February 23, 2026, Plaintiff filed a motion for leave to file a cross-motion out of time. (ECF 46.) Nissirios opposed that motion (ECF 47), and Plaintiff replied (ECF 48).[3]

## II.      LEGAL STANDARD

### a.  12(b)(1) Standard

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Where a defendant files a motion to dismiss invoking the Eleventh Amendment sovereign immunity defense, such a

---

[2] For the reasons articulated herein, Plaintiff's motion for leave to file her opposition to Chan's Motion to Dismiss out of time (ECF 27) is **DENIED** as moot.

[3] For the reasons articulated herein, Plaintiff's motion for leave to file a cross-motion out of time as to Nissirios' Motion to Dismiss (ECF 46) is **DENIED** as moot.

motion is analyzed under Fed. R. Civ. P. 12(b)(1). *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (Since "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction[,]" a motion invoking such a defense "may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)"); *see also Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 97 (D.N.J. 2020).

Ordinarily, even where a plaintiff proceeds *pro se*, "once a 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction." *See Towaki Komatsu v. NYP Holdings, Inc.*, No. 12-07088, 2013 WL 504602, at *1 (D.N.J. Feb. 7, 2013); *see also Lancaster v. New Jersey Transit Corp.,* No. 20-1995, 2021 WL 4473114, at *2 (D.N.J. Sept. 30, 2021). "However, because 'Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense,' and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability." *Saint-Jean*, 509 F. Supp. 3d at 97 (quoting *Garcia v. Knapp*, No. 19-17946, 2020 WL 2786930, at *3 (D.N.J. May 29, 2020)); *see also Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995); *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999).

When presented with a Rule 12(b)(1) motion to dismiss, "the Court must determine whether the defendant is making a 'facial or factual challenge to the court's subject-matter jurisdiction.'" *Garcia*, 2020 WL 2786930, at *3 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)); *see also Leadbeater v. JP Morgan* Chase*, N.A*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017) ("In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack

because the distinction determines how the pleading is reviewed."). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citations omitted). Conversely, a factual attack "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

"When a party moves to dismiss prior to answering the complaint ... the motion is generally considered a facial attack." *Saint-Jean*, 509 F. Supp. 3d at 97 (quoting *Leadbeater*, 2017 WL 4790384, at *3). Further, where a defendant invokes an Eleventh Amendment sovereign immunity defense in a Rule 12(b)(1) motion to dismiss, the motion is generally considered a facial attack. *See Garcia*, 2020 WL 2786930, at *4 ("Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge."); *see also Berk v. New Jersey Unemployment Ins.*, No. 23-12891, 2024 WL 4891749, at *2 (D.N.J. Nov. 26, 2024) ("Here, Defendant's motion asserts the defense of sovereign immunity under the Eleventh Amendment based on the facts as pled in the Complaint, thereby raising a facial attack."); *Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *3 (D.N.J. July 15, 2015).

A facial challenge under Rule 12(b)(1) is akin to a challenge under Rule 12(b)(6). *See Saint-Jean*, 509 F. Supp. 3d at 97 ("a [12(b)(1)] facial motion is handled much like a 12(b)(6) motion"); *see also Const. Party of Pa.*, 757 F.3d at 358 ("a [12(b)(1)] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)"). Thus, when "reviewing a facial attack, the Court should consider only the allegations in the complaint, along with documents referenced therein and attached thereto, in the

9

light most favorable to the nonmoving party[,]" and "allegations in the complaint [shall be] accepted as true." *Saint-Jean*, 509 F. Supp. 3d at 97.

### b.  12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims."  *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim.  *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.    <u>ANALYSIS</u>

#### a.  Chan Motion

In his Motion to Dismiss, Defendant Chan first argues that Plaintiff's suit must be dismissed under the doctrine of *res judicata* because Plaintiff asks this Court to undo a final judgment on the merits in at least one previous suit by Plaintiff against Chan featuring a claim under 42 U.S.C. § 1983.  (Chan Mot. at 8-10.)  Chan also argues that Plaintiff fails to state a claim under Section 1983 because she cannot demonstrate that Chan acted under color of state law or deprived her of her constitutional rights.  (*Id.* at 11-12.)  Finally, Chan argues that Plaintiff fails to adequately plead that he conspired with any other Defendants to deprive Plaintiff of her constitutional rights.  (*Id.* at 12-13.)  The Court agrees with Defendant Chan on all points.

First, the Court finds that Plaintiff's claim against Chan is precluded by the doctrine of *res judicata*.  "A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'"  *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (quoting *In re Mullarkey,* 536 F.3d 215, 225 (3d Cir. 2008)).  Here, Chan correctly argues that the instant case is a reiteration of *Lee v. Gallina-Mecca*, No. 23-06495, 2025 WL 444436 (D.N.J. Feb. 10, 2025), in which Plaintiff sued Defendants Judge Gallina-Mecca and Nissirios for alleged violations of her constitutional rights under 42 U.S.C. § 1983 flowing from the same underlying family court proceedings at issue in this case, and which this Court dismissed with prejudice.  All the elements of claim preclusion are met, and the fact that Defendant Chan was not party to the original action is of no moment.  "Although [Plaintiff] named new defendants in his pro se complaint, res judicata applies 'against a plaintiff who has previously asserted essentially the same claim against different defendants where there is [a] close or significant

relationship between successive defendants.'" *Jackson v. Dow Chem. Co.*, 518 F. App'x 99, 102 (3d Cir. 2013) (quoting *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3d Cir. 1972)).  The close or significant relationship between Defendant Chan and Defendants Judge Gallina-Mecca and Nissirios exists because Chan was a party to the underlying family law proceedings overseen by Judge Gallina-Mecca and in which Nissirios was appointed guardian *ad litem* of Chan and Lee's children.  For these reasons, Plaintiff's Section 1983 claims against Chan are precluded by the doctrine of *res judicata*.

Second, the Court agrees that Plaintiff has failed to plead that Chan was a state actor who could be subject to suit under Section 1983.  "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Benn v. Universal Health Sys.,* 371 F.3d 165, 169–70 (3d Cir. 2004)).  Plaintiff has pleaded no facts supporting the notion that Chan was a state actor—to the contrary, Plaintiff acknowledges in the Amended Complaint that Chan is "a private actor."  (Am. Compl. ¶ 30.)

Third, the Court agrees that Plaintiff has failed to plead that Chan (or the other Defendants) conspired to violate her civil rights. "The elements of a claim of conspiracy to violate federal civil rights are that (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs ... any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n. 15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (internal quotations omitted)).  The Third Circuit has also held that "[t]o constitute a conspiracy, there must

12

be a meeting of the minds." *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970) (internal quotations omitted)).  Apart from baldly asserting that Chan and the other Defendants formed a conspiracy, Plaintiff does not allege facts sufficient to establish a "meeting of the minds" in which Defendants would have come to an understanding supporting their alleged agreement to conspire against Plaintiff.  There are no other facts pleaded in the Amended Complaint that support the idea that Chan actually conspired with the other Defendants to deprive Plaintiff of her rights, so the Court cannot make such a finding.

For these reasons, Defendant Chan's Motion to Dismiss is **GRANTED**, and the Amended Complaint is **DISMISSED with prejudice** as to Chan because amendment would be futile.

### b.  Judiciary Motion[4]

The Judiciary Defendants argue that the Amended Complaint should be dismissed with prejudice for seven reasons.  First, they argue that Plaintiff's claims against Judge Gallina-Mecca are barred by *res judicata*.  (Judiciary Mot. at 9-12.)  Second, they argue that Plaintiff's claims against Judge Gallina-Mecca should be dismissed with prejudice pursuant to the entire controversy doctrine.  (*Id.* at 12-16.)  Third, they argue that the claims against Judges Gallina-Mecca and Novey Catuogno are barred by judicial immunity.  (*Id.* at 16-20.)  Fourth, they argue that the *Rooker-Feldman* abstention doctrine bars this Court from granting the relief Plaintiff seeks insofar as she asks the Court to undo or interfere with the judgment of the state court in the underlying family

---

[4] Defendant Nissirios's Motion largely dovetails with the Judiciary Defendants' Motion, such that the Court need not address it independently.  As discussed in this section, Plaintiff's claims against Nissirios are barred by *res judicata* and the entire controversy doctrine.  The Court adopts the reasoning set out in its previous Opinion in *Lee v. Gallina-Mecca*, No. 23-06495, 2025 WL 444436, at *7-8 (D.N.J. Feb. 10, 2025), finding that Defendant Nissirios is entitled to quasi-judicial immunity.  For the avoidance of doubt, Defendant Nissirios's Motion is **GRANTED**, and Plaintiff's claims against her are **DISMISSED with prejudice**.

proceedings. (*Id.* at 20-23.) Fifth, they argue that Plaintiff's ADA and Rehabilitation Act claims fail to plead facts sufficient to suggest that she was harmed on the basis of her disability. (*Id.* at 23-26.) Sixth, they argue that Plaintiff fails to state a *prima facie* claim under Section 1983. (*Id.* at 26-30.) Seventh, they argue that Plaintiff's claims against the State of New Jersey and the individual Judiciary Defendants in their official capacities are barred by sovereign immunity. (*Id.* at 30-34.)

In her Opposition, Plaintiff makes five counterarguments. First, she argues that the Judiciary Defendants lacked jurisdiction over her claims, and that judicial immunity does not apply to judicial actions taken without jurisdiction. (Opp. at 6-8.) Second, she argues that quasi-judicial immunity does not shield *ultra vires* conduct and non-judicial conduct. (*Id.* at 8-9.) Third, she argues that *res judicata* and the entire controversy doctrine are inapplicable to claims based on newly discovered evidence. (*Id.* at 9-11.) Fourth, she argues that the *Rooker-Feldman* abstention doctrine does not bar federal jurisdiction over void orders or independent constitutional claims. (*Id.* at 11-13.) Fifth, she argues that she has sufficiently stated *prima facie* claims under the ADA, the Rehabilitation Act, and the Fourteenth Amendment. (*Id.* at 13-15.) The Judiciary Defendants filed a short letter replying to Plaintiff's Opposition, effectively reiterating the arguments made in their Motion. (*See generally* Reply.)

The Court agrees with the Judiciary Defendants on all fronts. First, the Court finds that *res judicata* does bar Plaintiff's Section 1983 claims against Judge Gallina-Mecca and the other Judiciary Defendants. As discussed *supra*, the elements of *res judicata*, "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action" are met several times over in this case. *Duhaney* 621 F.3d at 347. Plaintiff has brought Section 1983 claims against Judge Gallina-Mecca, arising from the

14

same alleged conduct in the same underlying family court proceedings at least twice before (*see Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783 (3d Cir. Sept. 8, 2023); *Lee v. Gallina-Mecca*, No. 23-06495, 2025 WL 444436 (D.N.J. Feb. 10, 2025)), and in both of those cases, Plaintiff received final judgments on the merits, dismissing her claims. Plaintiff's argument that the Court should ignore *res judicata* because she was allegedly denied access to a sealed transcript is unsupported by any case law and does nothing to undo the finality or legitimacy of the prior rulings in this Court and the Third Circuit. The claim preclusion doctrine applies to the Section 1983 against both Judge Gallina-Mecca and Nissirios, as they were parties to Plaintiff's previous lawsuits. The doctrine also applies to Judge Novey Catuogno and Andreano for exactly the same reasons articulated *supra* when discussing Chan's Motion: there is a "close or significant relationship" between the original defendants (Judge Gallina-Mecca and Nissirios) and the new defendants (Judge Novey Catuogno and Andreano) because the new defendants were also involved in the underlying family court proceedings on which the instant Section 1983 claims are premised. *Jackson*, 518 F. App'x at 102.

Second, the entire controversy doctrine bars Plaintiff's remaining claims against Judge Gallina-Mecca and Nissirios. "Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). "The entire controversy doctrine precludes subsequent litigation not only of those claims previously litigated, but of *all* claims arising out of the same controversy that could have been raised in the earlier action. Furthermore, the entire controversy doctrine applies both to subsequent actions asserting different legal theories and those requesting alternative relief." *Printing Mart-Morristown, Inc. v. Rosenthal*, 650 F. Supp. 1444, 1447 (D.N.J. 1987), *aff'd sub*

15

*nom.*, *Appeal of Printing Mart-Morristown, Inc.*, 856 F.2d 184 (3d Cir. 1988). In this case, Plaintiff's Amended Complaint suggests that she was aware of the conduct that forms the basis of her ADA and Rehabilitation Act claims while that conduct was ongoing, including on or the before the dates that she filed her previous suits flowing from the same series of events (i.e. the underlying family court proceedings). (*See, e.g.,* Am. Compl. ¶ 9 (noting that Plaintiff's medical emergency and alleged accommodation requests began in November 2021).) Plaintiff herself pleads that she knew about this conduct as it was occurring in real time, and yet she chose not to bring it up in any of her prior lawsuits. The entire controversy doctrine prohibits parties from engaging in such piecemeal litigation tactics, so the ADA and Rehabilitation Act claims against Defendants Judge Gallina-Mecca and Nissirios are **DISMISSED with prejudice**.

Third, the ADA and Rehabilitation Act claims against Judge Novey Catuogno are barred by judicial immunity. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* The Supreme Court has, however, identified two exceptions to this rule. "First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. To determine whether an act is judicial, courts look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial

16

capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). There is nothing in the Amended Complaint to suggest that Judge Catuogno Novey's allegedly illegal actions were taken without jurisdiction or done outside of her role as a judge. In the Opposition, Plaintiff gestures at the idea that the allegedly wrongly withheld transcript of an *ex parte* proceeding somehow stripped the state court of jurisdiction over the underlying family court proceeding. (Opp at 6-7.) Apart from this bald assertion and some references to generalized principles of law discussed herein, Plaintiff offers no persuasive authority or facts that substantiate her argument, and the Court cannot give them any weight. It is clear from the record and procedural history of this case that the decisions Judge Novey Catuogno made that negatively impacted Plaintiff were made in her capacity as a state court judge and under lawful jurisdiction. As such, Judge Novey Catuogno is immune from Plaintiff's suit and the ADA and Rehabilitation Act claims against her are **DISMISSED with prejudice**.

Fourth, the Court agrees that the *Rooker-Feldman* abstention doctrine strips the Court of jurisdiction over Plaintiff's claims to the extent that they request injunctive relief undoing or otherwise interfering with the final judgment of a state court. The *Rooker-Feldman* doctrine applies in cases where "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). As discussed *supra*, all these conditions are met here, and Plaintiff's argument that "*Rooker-Feldman* does not protect void acts of state power from constitutional scrutiny" does nothing to cut against

the idea that the doctrine still applies to bar the Court from infringing on the state's sole jurisdiction.  (Opp. at 9.)

Fifth, the Court agrees that Plaintiff fails to state *prima facie* ADA and Rehabilitation Act claims against Andreano.[5]  "To establish a violation of Title II of the ADA, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Heffley v. Steele*, 826 F. App'x 227, 232 (3d Cir. 2020).  In her Amended Complaint, Plaintiff meets the first two elements of the claim—*i.e.*, that she is a qualified individual with a disability and that she was denied the benefits of some public entity's services—but she does not plead facts sufficient to establish that the Court denied her these benefits *because of* her disability.  In Andreano's case, his name appears in the body of the Amended Complaint only twice, and where his name does appear, Plaintiff does not clearly demonstrate how his conduct plausibly amounted to a denial of public benefits by reason of Plaintiff's disability.  (Am. Compl. ¶ 31.)  In fact, Plaintiff includes excerpted correspondence between her and Andreano in which Andreano suggests that the benefits Plaintiff complains of were denied for lack of a proper showing of cause for such benefits by Plaintiff.  (*Id.*)  Accordingly, Plaintiff's ADA and Rehabilitation Act claims against Andreano are **DISMISSED with prejudice**.

---

[5] While the Court's discussion here focuses on the ADA, the Court also agrees with the Judiciary Defendants' argument that Plaintiff has failed to state a claim under the Rehabilitation Act, because that law requires a showing that the defendant received federal funding, and Plaintiff has failed to plead that the state actors she has sued here received any federal funding.  *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013) ("One difference between the ADA and RA is that to bring a claim under the RA, a plaintiff must show that the allegedly discriminating entity receives federal funding.").

Finally, the Court agrees that Plaintiff's claims against the State of New Jersey are barred by sovereign immunity. This Court has previously held that sovereign immunity barred Plaintiff's claims against Judge Gallina-Mecca. *See Lee*, 2025 WL 444436 at \*3-5. The Court adopts the same reasoning here with respect to the State of New Jersey. None of the exceptions to sovereign immunity apply, and Plaintiff's claims against the State of New Jersey are **DISMISSED with prejudice**.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff's Amended Complaint is **DISMISSED with prejudice** in its entirety as to all Defendants. An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jose R. Almonte, U.S.M.J.
       Parties